(December 22, 1921.)

C. W. LEAF, Respondent, v. C. R. REYNOLDS, Appellant.

[203 Pac. 458.]

POSSESSION OF PERSONAL PROPERTY—ACTION FOR—DEMAND—WHEN UNNECESSARY—ESTOPPEL IN PAIS—CONDITIONAL SALES CONTRACT —FORFEITURE—WAIVER OF—INSTRUCTED VERDICT—EVIDENCE.

1. In an action for the specific recovery of personal property, when the defendant contests the case upon the claim of ownership and right of possession in himself, no previous demand by the plaintiff is necessary.

2. Where, as in this case, the general manager of a corporation encourages an act to be done, such corporation cannot afterwards exercise its legal right in opposition thereto, if his conduct

or acts of encouragement induced the party to change his position so that he will be pecuniarily prejudiced by the assertion of such adverse legal right.

3.  Where a conditional sales contract of personal property provides that upon breach by the vendee of any of the conditions thereof the vendor may, without notice, at its option, declare the contract terminated and retain all payments theretofore made by the vendee as liquidated damages, the vendor must exercise its option to declare the contract terminated, and upon it rests the burden to prove by affirmative acts establishing such forfeiture prior to the payment of the balance of the purchase price, or tender thereof, by the vendee, or his assignee who was induced to become such by the acts and conduct of the vendor. Otherwise it will be conclusively presumed that the vendor waived his right to forfeit the contract by reason of any such breach.

4.  *Held,* that the court did not err in instructing the jury to return a verdict in favor of respondent.

5.  Evidence examined and *held* sufficient to support the verdict and judgment in this case.

APPEAL from the District Court of the Eighth Judicial District, for Benewah County. Hon. R. N. Dunn, Judge.

Action to recover possession of an automobile or its value in lieu thereof. Judgment for plaintiff. *Affirmed.*

McFarland & McFarland, for Appellant.

"Where default is made by a vendee in some of the conditions expressed in a conditional sale of personal property, wherein it was provided that title should not pass to the vendee until all conditions were performed, the vendor is entitled to possession of the property and to choose his own paymaster, and he is not bound to accept any offer of payment from any other person other than the original purchaser." (*Lippincott v. Rich,* 19 Utah, 140, 56 Pac. 806.)

Ezra R. Whitla, for Respondent.

In actions of this kind demand need only be made where it is necessary to terminate a right of the party to the property or to confer such a right upon the plaintiff. (13 Cyc.

1404; *Leek v. Chesley*, 98 Iowa, 593, 67 N. W. 580; *Klug v. Munce*, 40 Colo. 276, 90 Pac. 603; *Burchett v. Purdy*, 2 Okl. 391, 37 Pac. 1053.)

Where the defendant pleads ownership and title, demand is eliminated from the case. (*Thompson v. Thompson*, 11 N. D. 208, 91 N. W. 44; *Bunce v. McMahon*, 6 Wyo. 24, 42 Pac. 23; *Guthrie v. Olsen*, 44 Minn. 404, 46 N. W. 853.)

Where one either by act or deed permits or induces another person to purchase property without notifying him of any claim of his in the property, he becomes estopped thereafter to set the same up. (*Trustees v. Smith*, 118 N. Y. 634, 23 N. E. 1002, 7 L. R. A. 755; *Bryan v. Ramirez*, 8 Cal. 461, 68 Am. Dec. 340; *Lindsay v. Cooper*, 94 Ala. 170, 33 Am. St. 105, 11 So. 325, 16 L. R. A. 813; *Carpy v. Dowdell*, 115 Cal. 677, 47 Pac. 695; *Dickerson v. Colgrove*, 100 U. S. 580, 25 L. ed. 618; *Markham v. O'Connor*, 52 Ga. 183, 21 Am. Rep. 249; *Thompson v. Sanborn*, 11 N. H. 201, 35 Am. Dec. 490; 16 Cyc. 761, 763, 764, 770; *Miller v. Ross*, 107 Mich. 538, 65 N. W. 562; *Brooks v. Martin*, 43 Ala. 360, 94 Am. Dec. 686.)

Under the explicit provisions of sec. 8049, C. S., as well as numerous decisions thereon, the various tenders made were sufficient and the company could not escape the same by their actions in the case. (38 Cyc. 134–136; *Holmes v. Holmes*, 12 Barb. (N. Y.) 137; *Witt v. Dersham*, 146 Mich. 68, 109 N. W. 25.)

A demand or some affirmative action by the vendor terminating the contract is essential and necessary before the vendee's right in the property is terminated. (*People's Furniture & C. Co. v. Crosby*, 57 Neb. 282, 73 Am. St. 504, 77 N. W. 658; *O'Rourke v. Hadcock*, 114 N. Y. 541, 22 N. E. 33; *New Home Sewing Machine Co. v. Bothane*, 70 Mich. 443, 38 N. W. 326; *Wheeler & Wilson Mfg. Co. v. Teetzlaff*, 53 Wis. 211, 10 N. W. 155; *Nattin v. Riley*, 54 Ark. 30, 14 S. W. 1100; *Day v. Bassett*, 102 Mass. 445.)

The vendee should be given the opportunity to pay when a forfeiture is declared. (35 Cyc. 673; *Pease v. Teller Co.*, 22 Ida. 807, 123 Pac. 981.)

Reynolds took his title to this property charged with absolute knowledge of Leaf's interest therein. One buying property under such conditions is only in the position of the vendor. (*California Cured Fruit Assn. v. Stelling*, 141 Cal. 713, 75 Pac. 320; *Phillips v. Reitz*, 16 Kan. 396; *Hayden v. Dwyer*, 47 Minn. 246, 50 N. W. 200; *Gaertner v. Western Elevator Co.*, 104 Minn. 467, 116 N. W. 945; 5 C. J. 962, par. 150; *Fleming v. Law*, 163 Cal. 227, 124 Pac. 1018; *Northwestern & P. H. Bank v. Rauch*, 8 Ida. 50, 66 Pac. 807.)

BUDGE, J.—This action was brought by respondent to recover possession of an automobile, or the value thereof in case possession could not be obtained.

It appears from the record that on May 9, 1918, the Eldridge Buick Company, a Washington Corporation, entered into a conditional sales contract with one E. R. Kelly at Spokane, for the purchase by the latter of a certain Buick automobile, at a purchase price of $925, of which $500 was paid on said date, contemporaneously with the delivery of the car to Kelly, and the balance of $425 was to be paid in instalments, the first for $53.16 on June 9, 1918, and the remaining instalments of $53.12 on the 9th of each succeeding month until the entire amount was paid. The contract provided, among other things, that:

"Title to said property is expressly reserved in the Vendor, and the payment of the full purchase price is a condition precedent to the sale and transfer of title to said property. . . . ."

"At any time that, in the judgment of the Vendor, the security for the balance of the purchase price remaining unpaid shall become insufficient, . . . . the vendor may retake the property and retain the same in its possession, . . . . "

"The Vendee shall not permit the property to pass from the Vendee's exclusive possession and control, nor shall Vendee assign or sell any interest in the property or in this contract, or permit the property to become subject to any

lien or encumbrance without the written consent of the Vendor; and shall not permit the property to be seized or levied upon, upon any valid claim against the property or Vendee. . . . . ''

"Time and the performance of each and every covenant and condition of this agreement by Vendee are of the essence hereof, and upon the breach of any of said conditions, or in case Vendee shall abuse, misuse, secrete, remove or attempt to secrete or remove said personal property, the Vendor or its assigns may, without notice, at its option,

" (1) Declare this contract terminated, and retake possession of said property . . . . and retain all payments theretofore made . . . . as liquidated damages . . . . ; or (2) Declare the whole unpaid balance of said contract, together with interest thereon, immediately due and collectible."

The evidence is uncontroverted to the effect that Kelly drove the car to St. Maries, Benewah county, where it was seized by the sheriff while being used in the transportation of intoxicating liquor; that while the car was being so held, J. G. Fralick, assistant cashier of the Lumbermen's State Bank of St. Maries, called on E. C. Finlay, general manager of the Eldridge Buick Company, at Spokane, on behalf of respondent, who desired to purchase the car; that a conversation was had between Fralick and Finlay, with respect to which the latter, who was called as a witness for appellant, testified as follows: "A. I told him I wanted the money out of this deal, in fact I said I did not want any trouble. I made a statement that I wanted my money out of it. I didn't care whether it came from Kelly or who it was. Q. You did tell him, Mr. Finlay, that he would have to settle with Kelly, as you had had to take over such a deal before? A. I did tell him that Kelly had an equity in the car. We did not want any trouble from Kelly if we did sell it. Q. The substance of it was, you told him that if he would settle with Kelly he could have your equity in the car for the amount that was still due? A. I referred to that. It would be necessary that we would have to be released as far as we thought possible from any obligation

from whoever we sold it to''; that the substance of this conversation was reported to respondent; that subsequently, on June 8, 1918, respondent paid Kelly $100 and received from him a bill of sale of the car; that June 9, 1918, fell on Sunday, and that on the following day Fralick advised the company by telephone that respondent had purchased Kelly's interest in the car, and asked if their Spokane correspondent bank might make the payment then due under the contract, whereupon he was informed that the matter had been turned over to John A. Gordon, the company's attorney; that Fralick then requested Mr. Rouse, cashier of the Fidelity National Bank of Spokane, by telephone, to tender the payment then due; that Mr. Rouse made a verbal tender, which he confirmed by a tender in writing, to Mr. Gordon, which tender was refused; that on the following morning respondent visited Gordon at Spokane, informed him of Fralick's conversation with Finlay, of his purchase of Kelly's interest in the car, showed him the bill of sale and offered to pay the instalment then due; that this tender was refused; that appellant Reynolds was in Gordon's office at the time respondent was there; that Gordon had told Reynolds that Leaf was coming to see about the car; that a tender in writing of the instalment due upon the car had been made on Leaf's behalf the day before, but that it was an illegal tender; that he showed him the tender; that respondent told Reynolds of the entire transaction; that Reynolds offered Gordon $550 for the car; that the latter asked respondent to raise the offer; that respondent refused to do so but offered to pay the entire indebtedness due on the car under the contract; whereupon the company assigned to Reynolds its interest in the car, with the express provision that the company ''makes no covenants of warranty whatsoever, either express or implied, in regard to said personal property, as to its title. . . . . ''

Upon the institution of this action, respondent paid the amount due on the car, together with interest, into court. The cause was tried to the court and a jury. After respondent had introduced his evidence, appellant moved for

a nonsuit, which was denied, and after the testimony was all in, the motion was renewed and again denied, whereupon respondent moved the court to instruct the jury to bring in a verdict in his favor, which motion was granted. This appeal is from the judgment awarding respondent the possession of the automobile or in lieu thereof its value, to wit, $750.

Appellant assigns as error the action of the court in denying the motion for nonsuit, in granting respondent's motion to instruct the jury, and in rendering judgment against appellant, and that the evidence is insufficient to support the verdict and judgment:.

"(a) Because respondent failed to prove at the trial that he was the owner or entitled to the possession of the automobile in controversy.

"(b) For the reason that when respondent received the bill of sale for the automobile from E. R. Kelly, said Kelly did not have title to the same, nor was he entitled to the possession thereof, but the title to said automobile was in the Eldridge Buick Company, a corporation.

"(c) That at the time appellant contracted with said Eldridge Buick Company for said automobile, he had no knowledge or notice that respondent had contracted with either Kelly or said Eldridge Buick Company for the purchase of said automobile.

"(d) That no contract or agreement was entered into by and between said Eldridge Buick Company and Leaf, or with anyone authorized by said Leaf for the sale by the Eldridge Buick Company of said automobile to said Leaf; that in lieu of any such contract or agreement, there was merely inquiries for information made by one Fralick of Mr. Finlay, the Eldridge Buick Company's official, in behalf of said Fralick.

"(e) That it appears from the evidence that no demand for said automobile was made upon appellant prior to the institution of this action, although appellant had possession of the same at the time the action was instituted."

The rule is well settled that in an action for the specific recovery of personal property, when the defendant contests the case upon the claim of ownership and right of possession in himself, no previous demand by the plaintiff is necessary. (23 R. C. L., Replevin, sec. 43, note 7, p. 888; *California Cured Fruit Assn. v. Stelling,* 141 Cal. 713, 75 Pac. 320, *Hennessey v. Barnett,* 12 Colo. App. 254, 55 Pac. 197; *Wall v. De Mitkiewicz,* 9 App. D. C. 109; *Sellers v. Catron,* 5 Ind. Ter. 263, 82 S. W. 742; *Barton v. Mulvane,* 59 Kan. 313, 52 Pac. 883; *Heagney v. J. I. Case Threshing Mach. Co.,* 4 Neb. (Unof.) 745, 96 N. W. 175; Id., 4 Neb. (Unof.) 753, 99 N. W. 260.) Under the facts of this case, a demand would have been futile. As is said in Shinn on Replevin, sec. 311, p. 269, and quoted with approval by the supreme court of North Dakota in *Thompson v. Thompson,* 11 N. D. 208, 91 N. W. 44: "When the defendant contests the case on the merits wholly upon the claim of ownership and right of possession of the property in himself no previous demand is necessary, even for the purpose of entitling the plaintiff to recover costs in case of a verdict in his favor."

While no formal contract was entered into between the company and Leaf, the evidence is uncontradicted that Finlay in his conversation with Fralick, gave the latter to understand that Kelly then had an equity in the car, which it would be necessary for respondent to purchase if he wished to obtain the car, and that the company merely wanted the amount due under the contract and did not care from whom it came. The substance of this conversation was communicated by Fralick to Leaf, who purchased Kelly's equity, notified the company, and made a tender of the first instalment when it became due and before the car had been otherwise disposed of.

The law applicable to such a state of facts is aptly and concisely stated in *Swain v. Seamens,* 9 Wall. (U. S.) 254, 19 L. ed. 554, as follows: "Where a person tacitly encourages an act to be done, he cannot afterwards exercise his

legal right in opposition to such consent, if his conduct or acts of encouragement induced the party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim.''

And in the case of *Exchange State Bank v. Taber,* 26 Ida. 723, 145 Pac. 1090, this court held: ''Where a party by conduct has intimated that he consents to an act which has been done or will offer no opposition thereto, though it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the action to the prejudice of those who have acted on the fair inference to be drawn from his conduct.'' (See, also, *Dickerson v. Colgrove,* 100 U. S. 580, 25 L. ed. 618; *Carpy v. Dowdell,* 115 Cal. 677, 47 Pac. 695; *Trustees v. Smith,* 118 N. Y. 634, 23 N. E. 1002, 7 L. R. A. 755, and *Carruthers v. Whitney,* 56 Wash. 327, 134 Am. St. 1114, 105 Pac. 831.)

From the evidence, the conclusion is irresistible that Finlay encouraged respondent to purchase Kelly's interest in the car, and having done so, respondent then sustained the same relation towards the company under the contract that Kelly had previously occupied. The company was thereafter in no position to claim a forfeiture of its contract with Kelly, to the prejudice of respondent.

Moreover, it is almost universally held that a contract which provides that a forfeiture may be declared will be strictly construed (10 R. C. L., Equity, sec. 75, p. 328, note 11), and even where a party is under the circumstances entitled to a forfeiture, if he waives his right thereto, he will thereafter be precluded from enforcing it. (*Jones v. Robbins,* 29 Me. 351, 50 Am. Dec. 593; notes, 68 Am. Dec. 85 and 86 Am. Rep. 54.)

As was said in the case of *Wheeler & Wilson Mfg. Co. v. Teetzlaff,* 53 Wis. 211, 10 N. W. 155: ''Forfeitures are not favored by the law, and the party seeking to enforce them must see to it that he has done everything on his part which

entitles him to claim its enforcement. . . . . The status of the parties under the contract, so far as the right to possession is concerned, was not changed by the failure to pay according to contract, but by the exercise of the option reserved to the appellant to repossess itself of the machine, and notice of such option given to the respondent.''

In *Vaughn v. McFadyen,* 110 Mich. 234, 68 N. W. 135, the court said: ''We think it is clear that a payment made at any time before possession was actually taken would have vested the title in the Vaughn Manufacturing Company (the purchaser), and that a tender of such payment would work the same result.''

While in the case of *Pease v. Teller Co.,* 22 Ida. 807, 123 Pac. 981, this court said: ''Notice was not given to respondent that the contract was terminated and a forfeiture declared by the appellant or his assignors. . . . . The law has no interests of its own to subserve in insisting upon forfeitures or the other results of default. The remedies it gives are for the benefit of the vendor, and he may waive them if he will. He may do this, moreover, either expressly or by implication, and as the results of default more often work hardships to the buyer than to the seller, the law looks with complaisance at least upon those acts of the vendor which may fairly be construed as indicative of his intention not to insist upon a forfeiture of the buyer's rights. . . . . ''

''The rights of the parties to the contract should not be adjudged upon technical or narrow questions or considerations so as to do injustice to the parties to the contract, but the court should give full consideration to all the facts and the intention and action of the parties, and give such judgment as will be just and equitable to the parties affected.''

There is no competent evidence in the record tending to prove that the company ever exercised its option to declare the contract forfeited, and if such option had ever been exercised, the burden of proof thereof clearly rested upon appellant. In the absence of such proof, it will be conclusively presumed that the company waived its right to forfeit the contract by reason of any default, or breach of its terms,

upon the part of Kelly prior to the tender by respondent of the balance of the purchase price.

There is no merit in appellant's contention that at the time he purchased an assignment of the contract he had no knowledge or notice that respondent had contracted with either Kelly or the company for the purchase of the car. The evidence clearly refutes appellant's contention in this regard. Furthermore, by the assignment, appellant acquired only such rights as the company then had.

Since there is no material conflict in the testimony introduced either on behalf of appellant or respondent, from which it appears that title to the car had vested in respondent under the facts herein disclosed, the court did not err in instructing the jury to render a verdict in favor of respondent.

From what has been said it follows that the judgment should be affirmed, and it is so ordered. Costs are awarded to respondent.

Rice, C. J., and McCarthy and Lee, JJ., concur.

Dunn, J., being disqualified, did not sit at the hearing or participate in this opinion.