GAS CITY TRANSFER COMPANY, INC. *v*. MILLER

[No. 16,176. Filed June 13, 1939. Rehearing denied November 28, 1939.]

*Rouse & Travis, Orph M. Hall,* and *Miller & Miller,* for appellant.

*David E. Rosenfeld,* for appellee.

STEVENSON, C. J.—On August 1, 1934, one Sherman A. Smith was driving a Studebaker truck and trailer west on United States Highway No. 40 near Marshall, Illinois. The motor vehicle which he was operating was in the possession and under the control of said Smith by reason of a contract which he had with the appellant Gas City Transfer Company, Inc. At the time and place aforesaid the appellee Raymond Miller had in his employment one Robert Crouch who was operating his own truck eastwardly on said highway. A collision occurred between the trucks as a result of which the truck driven by Smith was totally destroyed by fire.

The appellant filed suit against the appellee alleging that the appellant was the owner of the truck which Smith was operating and that said truck was damaged and destroyed by the negligent operation of the truck driven by Robert Crouch who at the time, it was alleged, was the agent and servant of the appellee Raymond Miller. An answer in general denial was filed to this complaint. The case was submitted to the court for trial without a jury and the court, after hearing the evidence, found for the defendant, the appellee herein. A motion for new trial was filed and overruled and this appeal has been perfected. The error assigned in this court is in overruling the motion for a new trial.

Two questions are presented for our consideration under this assignment. The appellant contends that the evidence discloses without contradiction that at the time and place of the collision Robert Crouch was acting as the agent and servant of the appellee Raymond Miller and was at the time and place operating his truck within the scope of his employment and

in the furtherance of the appellee's business. The appellee contends that the said Robert Crouch at the time and place was operating his own motor vehicle as an independent contractor.

The appellee, Raymond Miller, testified as to the relationship which existed between him and Robert Crouch at the time of the accident. Miller stated that in August, 1934, he had a contract with the National Carloading Company to haul freight. That he had employed Robert Crouch to assist him in moving freight when he had more loads than his own equipment could handle. The appellee further testified that Crouch operated the truck under a permit issued by the Public Service Commission of Indiana to said Miller in which the truck owned and operated by Crouch was listed as a part of Miller's operating equipment. The Public Service Commission had issued a blue ticket to Crouch stating that Crouch's truck was "operating for the Ray Miller Trucking Company". On the side of the trailer operated by Crouch were painted the words "Operating for Ray Miller Trucking Company". Crouch had no permit from the Public Service Commission to operate as an individual. The charges for hauling the freight were paid by the National Carloading Company directly to the appellee. The bill of lading was issued to the appellee and Crouch was paid seventy-five percent (75%) of the gross revenue paid by the shipper. Miller retained the other twenty-five percent. The merchandise which he was hauling on the night in question he had obtained at St. Louis.

The appellee contends that since Crouch hired his own drivers and since the appellee had no authority to direct or control the manner of driving, the evidence is insufficient to establish the relationship of

master and servant between the appellee and Crouch. The appellant states in his brief that the trial court was of the opinion that at the time of the accident Crouch was not operating as an independent contractor. We think this question has been recently decided by our Supreme Court in the case of *Bates Motor Transport Lines, Inc.* v. *Mayer* (1938), 213 Ind. 664, 14 N.E. (2d) 91. In this case the Supreme Court had before it a set of facts very similar to those involved in the case at bar. The Bates Motor Transport Lines was a corporation which was operating under a permit as a common carrier in interstate transportation. They employed one Glade to use his own truck in the movement of freight consigned to them for shipment. The court in passing upon the question of the relationship which existed between Glade and the Bates Motor Transport Lines said (p. 671):

"Appellant also contends that there is no evidence that the driver and operator of the truck was a servant, agent, or employee of the appellant. What has been said concerning the weight of evidence may be applied to this objection. As heretofore recited, the appellant was the common carrier, licensed under the laws of Indiana. It is apparent from a reading of the entire record that it was the principal. There is no question as to the ownership of the truck. The president of the appellant company testified that it did not own trucks. That is not a question in the case. The question is: Whose business was being transacted? Who was the common carrier? Who held the permit from the Public Service Commission of Indiana? The facts do not make Glade an independent contractor. . . . . As compensation he received 70 per cent. of the freight charges collected by appellant. It is true he furnished the tractor and trailer. The appellant furnished the permit to transport interstate shipments as a common car-

rier, and furnished the freight to be transported; maintained the offices and equipment, and all supplies necessary to engage as a common carrier in the transportation of the interstate freight. Glade could not engage in that business except as the agent or employee of appellant. The appellant does not deny that it authorized Glade to transport the freight contained in the truck on the evening of the accident, nor does it dispute that Glade transported that freight without any permit issued to him by the Public Service Commission of Indiana, nor does it dispute that it held a permit issued by that commission over the designated route from Chicago to Louisville. The appellant was the one party concerned which held such permit and such right under the laws of the State of Indiana. It cannot escape liability upon the theory of its affirmative paragraph of answer, that Glade was an independent contractor."

It is our opinion, therefore, that the evidence discloses without contradiction circumstances which would render the appellee liable for the negligent operation of the truck driven by Crouch on the occasion in question.

A more serious question is presented however by the proposition advanced by the appellant to the effect that a conditional vendor of a motor vehicle is entitled under the law to maintain an action for damages to said property occasioned by the negligence of a third party. There was evidence in this case from which the trial court might have found that at the time of the accident Crouch was operating a truck which he had purchased from the appellant on a contract of conditional sale.

The trial court was evidently of the opinion that the appellant as a conditional vendor of the truck de-

stroyed could not maintain an action against the appellee for damages for the loss sustained.

The parties have called the court's attention to no authority in the State of Indiana on this particular question. The Appellate Court in the case of *Craig* v. *Lee* (1924), 81 Ind. App. 319, 142 N.E. 399, has held that the purchaser of an automobile under a conditional sales contract having paid part of the sale price and being in possession of the property may sue for injuries thereto. There is ample authority in support of the proposition that where goods are sold and delivered to the vendee on a conditional contract of sale, the loss or destruction of the property while in the possession of the vendee does not relieve him of the obligation to pay the price and therefore the vendee suffers the loss. (See Annotation, 38 A.L.R. 1319, *Jessup* v. *Fairbanks, Morse & Company* (1906), 38 Ind. App. 673, 78 N.E. 1050.)

The right of a conditional vendor to maintain an action for damages occasioned to the subject-matter of the sale by the negligence of a third party seems to depend upon the right of possession at the time of the injury complained of. This rule was discussed by the Supreme Court of Alabama in the case of *Louisville & N.R. Co.* v. *Miller* (1923), 209 Ala. 378, 96 So. 322. In that case the appellee Miller sued the appellant for damages for wrongfully killing a mare. The evidence disclosed that two weeks before she was killed the plaintiff had sold her to one Coates under a conditional sales contract, title to remain in Miller until the purchase price was paid. Coates was in possession of the mare at the time she was killed. The court in passing upon the right of the plaintiff to maintain the action said (p. 379):

"The burden is on the plaintiff to show owner-ship of the mare, that it belonged to him when in-jured or killed and that he was, when she was killed, in rightful possession either active or con-structive in order to maintain trespass for injur-ing or killing her. . . . . In this case the right of possession of the mare was in Coates, the vendee, until default in the payment of the purchase price."

The court held that the plaintiff could not maintain the action in the absence of a showing that the time for payment had passed at the time of the loss. This same rule is announced in 55 C.J. 1312 in the follow-ing language:

"The conditional seller has a property interest in the chattels sold which entitles him to maintain *after default of the buyer* an action against a third party for injury to or destruction of the property by negligence."

The right to maintain the action is determined by the rights of the parties in and to the chattel at the time the same is damaged or destroyed. These rights cannot be affected by subsequent de-faults in the performance of the conditional sales contract. In the case of *Lacey* v. *Great Northern R. Co.* (1924), 70 Mont. 346, 225 Pac. 808, 38 A.L.R. 1331, the action was instituted to recover for damages to an automobile because of the negligent operation of the appellee's train. This automobile had been sold by Lacey to one Massi on a conditional sales contract and Massi was in possession thereof at the time of its destruction. Discussing the right of the plaintiff to maintain this action the court said (p. 350):

"The first question which presents itself is whether in view of the foregoing facts the plain-tiff has a right to maintain this action.

"Whether Massi had made all of the payments required of him, a subject somewhat doubtful upon the record, it is clear that plaintiff had not declared a forfeiture. The mere failure of a conditional vendee to make his payments on time does not change the status of the parties in the absence of an exercise of the option to declare a forfeiture by the vendor. The clause in the contract allowing the vendor to retake the property is not operative in the absence of affirmative action on his part. See *Wheeler & W. Mfg. Co.* v. *Teetzlaff,* 53 Wis. 211, 10 N.W. 155; *Leaf* v. *Reynolds,* 34 Idaho 643, 203 Pac. 458; *Teter* v. *Thompson,* 57 Cal. App. 329, 207 Pac. 260. It follows that at the time of the accident Massi had the legal right to the possession of the automobile. That as conditional vendee he had the right to maintain his action is beyond question."

This same question was presented to the Supreme Court of Washington in the case of *Helf* v. *Hansen & Keller Truck Company* (1932), 167 Wash. 206, 9 Pac. (2d) 110. In this case the purchaser of the automobile was in possession thereof as vendee under a conditional sales contract at the time of the collision. At the time of the accident no payment upon the contract was delinquent but subsequent thereto the payments became delinquent and the automobile was repossessed by a finance company. The Supreme Court of Washington held that "The respondent had a right to maintain the action even though subsequent to its institution the finance company repossessed the automobile and forfeited the contract." This same rule is discussed by the Supreme Court of Arizona in the case of *Pickwick Stages Corporation* v. *Gil et ux.* (1931), 38 Ariz. 7, 9, 296 Pac. 269, in which the following language appears:

"At the time of the collision plaintiffs were in possession of the car and under their contract to

purchase were rightfully in such possession, having made all payments as they became due. Neither the seller nor the seller's assignee had a right to the car or its possession at that time. It is true that the title to the car was in the C. I. T. Corporation and not in plaintiffs, but the latter's right to its possession, even though without title, was superior to the seller's, and this situation continued until the August payment became delinquent. If the plaintiff's rights in the car at the time of the accident were superior to those of the seller, what may be said of their rights as against a third party, who had tortiously injured it?''

It is our opinion in the light of the above authorities that the right of a conditional vendor to maintain an action for damages against a third person for the loss of the subject-matter of the sale must depend upon his right to possession thereof at the time of the wrongful act. In the absence of a showing that the conditional vendor at the time of the loss was entitled to the possession of the property, he cannot maintain an action for damages.

That this should be the rule seems well founded. It has long been the rule in Indiana that the conditional vendee has the right to recover the full measure of damages occasioned by injury to or loss of the subject-matter of the sale, and he is not relieved from his obligation to pay the full purchase price agreed upon even though the property be lost or destroyed. Under this rule the wrongdoer, whose tortious act has occasioned a loss, is required to respond to the full amount of the damage resulting from his act. His wrongful act gives rise to but one cause of action and a settlement by him for the loss occasioned is a bar to further proceedings. *(Harris* v. *Seaboard*

*Air Line R. Co.* (1925), 190 N.C. 480, 130 S.E. 319, 49 A.L.R. 1452.) Even in states where the conditional vendor is given a right to maintain an action for the wrongful destruction of the property the courts recognize the rule that a settlement by the wrong-doer with the vendor is a bar to further proceedings by the vendee. *(Harris* v. *Seaboard Air Line R. Co.,* supra; *Smith* v. *Gufford* (1895), 36 Fla. 481, 18 So. 717, 51 Am. St. Rep. 37; *Carolina, C. & O. R. Co.* v. *Unaka Springs Lumber Co.* (1914), 130 Tenn. 354, 170 S.W. 591. See also *Stotts* v. *Puget Sound Traction, Light & P. Co.* (1917), 94 Wash. 339, 162 Pac. 519, L.R.A. 1917D, 214.)

In many instances a rule allowing a conditional vendor to recover would operate to preclude the conditional vendee from enforcing a right to compensation for a very substantial loss.

If, by default, the conditional vendor becomes entitled to the possession of the property, then ordinarily the conditional vendee has no further right, title, or interest therein, and the conditional vendor may then maintain an action for the full amount of the loss. In the absence of a default however, the conditional vendor's rights are determined by the contract of sale and he must look to this as affording his relief in case the property is damaged or destroyed.

In the case at bar the appellant offered no evidence tending to show that Smith was in default in his payments for the truck that was involved in this accident. In the absence of such a showing it is our opinion that the appellant could not successfully maintain this action. Accordingly no error was committed by the court in overruling the motion for new trial.

Judgment affirmed.