(No. 7250.   February 18, 1946.)

MARY EDWARDS, Administratrix of the Estate of John Edwards, deceased, and MARY EDWARDS, Plaintiffs-Appellants, v. V. C. BELKNAP and G. P. WILLIAMS and BALTIMORE TRUST, Defendants-Respondents.

[166 P. (2d) 451.]

James, Shaw & James for appellants.

Hawley & Hawley for respondents.

BUDGE, J.—Originally this action was brought in the name of John Edwards and Mary Edwards, his wife, to cancel and set aside a deed given by them conveying their

one-half interest in certain mining property to the Baltimore Trust, a common law trust formed in the State of Idaho and unincorporated. John Edwards died prior to the trial, Mary Edwards is the administratrix of her husband's estate, and maintains this action in her trust capacity and individually. Briefly stated, the pertinent facts are substantially as follows:

June 13, 1942, John and Mary Edwards executed and delivered a quit-claim deed to certain mining property to the Baltimore Trust and received from Belknap and Williams, mentioned in the Declaration of Trust as trustees, a certificate for two units in the alleged Trust, said Trust being the owner of other mining properties in Blaine County, which claims were being operated by the Baltimore Trust, namely, the Ida Harlan, the Minnie May, the Victoria and the Baltimore and the Baltimore Extensions 1, 2 and 3, the Baltimore number 2, number 3 and number 4, as well as the Lucky Coin Group of seven claims, which was the consideration paid to, and received by, Mr. and Mrs. Edwards upon the execution and delivery of the deed in question, and that the certificate delivered to them was not at said time, nor thereafter, valueless. The deed was executed and delivered, and filed in the office of the County Recorder of Blaine County, said Declaration of Trust having been filed in said office prior thereto.

The Baltimore Trust has never been incorporated under the laws of the State of Idaho or elsewhere, and has never complied with the provisions of sec. 25-1616, I.C.A., by submitting to the Inspector of Mines, or filing with said Inspector, a report as required by the above mentioned section.

Misrepresentation and undue influence, constituting fraud, are alleged to have been made by respondent Williams to the Edwardses in order to obtain the deed herein involved. However, the trial court found adversely to appellants as to the alleged misrepresentations and fraud pled in the complaint. It is conceded by appellants there is conflict in the testimony upon the question of misrepresentation and fraud, the court having found there were no false representations made by Williams, nor undue influence used by him to secure the execution of the deed or the delivery of the same; that the consideration paid to the

Edwardses for the mining property was not valueless. Furthermore, it appears from the record that the Edwardses voluntarily executed and delivered the deed in question, and delivered possession of the mining property to the grantees named in the trust; that the grantees, relying upon the deed, expended between twenty and twenty-five thousand dollars in the development of the mining property; that John Edwards and his wife visited the mine during the progress of the work, and upon one occasion John Edwards entered the mine where the work was being carried on and stated to Plugoff and Williams, who accompanied him, in substance and effect, (said evidence being admitted without objection) that "he (Edwards) was impressed with the work and said it was the kind he would do and exactly the kind he would do to get the ore. And he was very much surprised that we hadn't encountered ore up to that time," and said, "If you keep along you won't go much further until you are bound to hit this ore." "Now I am very pleased with everything." At another time he said, "I made up my mind to go in with you fellows (Belknap and Williams) * * * McFadden has always handled my business * * * We'll go down and have him draw the deed, and I'll sign it." "There will be no more law on this. I am very satisfied." The record is replete with evidence to the effect that the Edwardses, when the deed was executed and delivered, had full knowledge who the purchasers were, that they were the trustees designated in the Declaration of Trust. Mr. McFadden, who prepared the deed, stated to the Edwardses, "Do you realize that when you sign a quit claim deed that you must know what you are doing, because if you sign a quit claim deed you lose your right, title and interest to that property."

No other conclusion can be reached from the record than that the Edwardses executed and delivered the quitclaim deed with the intention of conveying their right, title and interest in and to the mining property to the Baltimore Trust, represented by the trustees named in the Declaration of Trust. Furthermore, with full knowledge that the trustees, relying on the deed, intended to and did expend large sums of money with the acquiescence, encouragement and approval of the grantors.

The cause was tried before the court without a jury,

resulting in a decree in favor of respondents to the effect that appellants take nothing as against respondents, from which decree this appeal is prosecuted.

There are but two questions presented upon this appeal:

"First, that the Baltimore Trust is and at all times was as a matter of law, a corporation, but was never incorporated as a corporation either under the laws of the State of Idaho or elsewhere, and has never filed in the office of the Secretary of the State of Idaho any articles of incorporation and no corporate charter has ever been issued to it, and further that it has never been authorized to do business as a corporation in the State of Idaho, for which reasons the plaintiffs contend that the deed given by them to said Baltimore Trust is, and at all times has been, null and void.

"Second, it is the contention of the plaintiffs that the Baltimore Trust has never submitted any report to the Inspector of Mines of the State of Idaho or filed with said Inspector any report as required by the provisions of Section 25-1616, Idaho Code Annotated (1932), or otherwise, and has never complied with any of the provisions of said statute, for which reason it is not and never was entitled to engage in business or transact business in the State of Idaho, by reason of which the deed given to it is, and all times has been, null and void."

Respondents, in their answer, affirmatively allege:

"That the plaintiffs were aware of the fact that the defendant, Baltimore Trust, has made large expenditures and has done a great deal of development work upon the Lucky Coin Group under the deed made, executed and delivered by plaintiffs to the Baltimore Trust, and solely upon the rights of possession given under said deed; that by reason of their knowledge, of acquiescence in and encouragement in the doing of development work upon the said Lucky Coin Group under said deed, the plaintiffs have been and are estopped from claiming that the said deed is null and void."

The findings of the court below are to the effect that appellants were estopped from questioning the validity of their deed because of claimed status of respondents.

If, under the facts and circumstances of this case, appellants are estopped from questioning the validity of their deed or the status of the respondents, other questions presented become immaterial.

"The gist of an estoppel is that the person against whom it is urged shall have so conducted himself so as to lead the person urging it to act in a particular manner to his disadvantage." (*Laberee v. Laberee* (Ore.), 228 P. 686.)

"The essence of the doctrine of estoppel is that where a person does or omits to do something which influences the action of another, who relies and acts thereon, equity will not permit him to controvert the same to the injury of the other party." (*Parmely v. Showdy*, 148 N.Y.S. 1086.)

"Estoppel arises when one party by representation induces another to change position to his detriment." (*Blaisdell Automobile Co. v. Nelson* (Me.), 154 A. 184.)

To hold in the case at bar that the principle of estoppel is not applicable to the facts herein would result in reinvesting in appellants the mining property conveyed by them to respondents, together with the benefit of the expenditures in the development of the property in an amount between twenty and twenty-five thousand dollars, said expenditures being made as and in the same manner as would have been made by appellants in the development of the mine. Appellants do not seek to reimburse respondents for the vast expenditures made by them in reliance on their deed, or otherwise, but, on the contrary, with full knowledge acquiesced in and encouraged respondents in making expenditures, etc., and now seek to profit thereby.

The following rule is stated in 8 Fletcher Cyclopedia Corporations, chap. 46, sec. 3958:

"A person who conveys real property to an association as a corporation cannot avoid the conveyance by denying the corporate existence of the grantee * * *"

There are authorities to the effect that no one could assert that a common law trust was illegal or complain of its assuming the exercise of corporate powers except the state. (*Hodgkiss v. Northland Petroleum Consol.* (Mont.),

67 P. (2d) 811; *Haynes v. Central Business Property Co.* (Wash.), 249 P. 1057.) All trusts are not illegal and thus prohibited as a matter of law.

Conceding that while the trustees named in the Declaration of Trust may not be said to be technically an association or legal entity, the principle of law announced is applicable. Appellants executed and delivered their deed, were paid a valuable consideration, placed appellants in possession, made no objection to the large expenditures that were being made by respondents relying upon their deed, it would, therefore, seem clear that they are not now in position to question the status of respondents or their availability to take title to said property.

It would seem that where there is a conveyance of real property to an association or to a trust where the trustees are definitely identified, that the principle of estoppel applies. (*Hodgkiss v. Northland Petroleum Consol.*, supra.)

Appellants strenuously contend the deed is void in that the grantee was, in law, a corporation "but was never incorporated as a corporation either under the laws of the State of Idaho or elsewhere, and has never filed in the office of the Secretary of the State of Idaho any articles of incorporation and no corporate charter has ever been issued to it, and further that it has never been authorized to do business as a corporation in the State of Idaho"; that the only grantee named was the Baltimore Trust.

In the Declaration of Trust Belknap and Williams set forth an agreement between themselves where they adopted or designated the name of the grantee as the name of the trust created by the declaration. It is very well stated in 19 R.C.L., p. 1333, as follows:

"Again, a contract or obligation may be entered into by a person by any name he may choose to assume. All that the law looks to is the identity of the individual, and, when that is ascertained and clearly established, the act will be binding on him and on others."
This rule appears to be universal. (*Hodgkiss v. Northland Petroleum Consol.*, supra.)

In Sears on Trust Estates & Business Companies (2d Ed.) p. 374, it is said:

"Strictly speaking, it may be said that a trust cannot adopt a name. It has no power to do anything implying either volition or dissent. It is merely property with a characteristic attached to or inhering in it. But trustees, who represent it, are individuals *sui juris,* and they may adopt a name or names for transacting business, executing contracts, or suing and being sued."

A deed is sufficient if the grantee can be identified by extrinsic evidence. (*York v. Stone* (Wash.), 34 P. (2d) 911.) ·

The trustees of the defendant trust were parties to the agreement. They were identified persons. Appellants had knowledge of the Declaration of Trust, it had been duly filed in the office of the County Recorder of Blaine County; they knew they were conveying the mining property by deed to the Baltimore Trust named therein, and to the trustees of said Trust, Belknap and Williams.

In the instant case appellants take the position, as we understand it, that they conveyed the mining property by solemn deed to identified parties, were paid the consideration, placed respondents in possession, stood by without objection during the vast expenditures heretofore referred to and, at the same time, contend that respondents are a corporation by reason of recitals in the Declaration of Trust, and not having filed articles of incorporation or received a charter, the deed was void *ab initio* and should be set aside and appellants reinvested with the title to the property, restored to possession, and enjoy the fruits of the moneys expended in the development of the property. To so hold would be inequitable, even though it be conceded, which we do not decide, that the Baltimore Trust is a corporation, and had not complied with the statutes authorizing it to do business within the state. If a corporation in law, appellants dealt with it as such. If a common-law trust, represented by trustees, appellants dealt with individuals *sui juris,* and are thereby estopped.

In 7 C.J.S., sec. 5, p. 25, the general rule of estoppel is stated as follows:

"One who deals with an association as a legal entity capable of transacting business, and in consequence receives from it money or other things of value, *is estopped from*

*denying the legality of its existence."* (12 C.J.S., sec. 31, pp. 846-7; *Petty v. Brunswick etc. Ry. Co.* (Ga.), 35 S.E. 82; *General American Oil Co. v. Wagoner Oil & Gas Co.* (Okla.), 247 P. 99.)

In *Seeley v. Security National Bank,* 40 Ida. 574, 583, 235 P. 976, quoting from the Supreme Court of the United States in *Swain v. Seamens,* 9 Wall (U.S.) 254, 19 L. ed. 554, the following language is used:

" 'Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim.'

"This court has approved of this doctrine in the following cases: *Leaf v. Reynolds,* 34 Ida. 643, 203 P. 458; *Exchange State Bank v. Taber,* 26 Ida. 723, 145 P. 1090; *Farber v. Page & Mott Lumber Co.,* 20 Ida. 354, 118 P. 664. See, also, *Shafer v. Killpack,* 53 Utah 468, 173 P. 948; *Lillard v. Board of County Commissioners,* 102 Kan. 822, 172 P. 518."

Estoppel to question or object to a thing done or a position taken by another may arise from express consent thereto, as well as by acts and conduct. This rule has been applied in numerous instances to preclude the consenting party from asserting the invalidity or avoiding the consequences of acts which were beyond the legitimate and rightful powers of the parties acting when done pursuant to, or in reliance upon, such consent. In the instant case respondents could not maintain an action to declare the deed void and recover the consideration paid therefor, although conceding its lack of qualification to do business. Both parties having consented to and consummated the transaction here involved, each would be estopped from asserting the invalidity or avoiding the consequences of their acts. (*Ferguson Fruit & Land Co. v. Gooding,* 44 Ida. 76, 85, 258 P. 557.)

19 Am. Jur., sec. 57, p. 668, in discussing the principle of estoppel announces the following rule:

"The courts are especially disposed to uphold a claim of estoppel by silence or inaction where one party with

full knowledge of the facts has stood by without asserting his rights, or raising any objection while the other party, acting on the faith of such apparent acquiescence, incurred large expenditures which will be wholly or partially lost if such rights or objections are subsequently given effect. This principle finds frequent application in respect of improvements and expenditures upon real property under a claim of right."

Clearly respondents would not have made the large expenditures heretofore referred to or performed the labor incident to the development of the mine in the absence of the deed given to it, and the encouragement and acquiscence of appellants.

In *Murtaugh Highway Dist. v. Twin Falls Highway Dist.*, 65 Ida. 260, 142 P. (2d) 579, it is said:

"Where a party by conduct has intimated that he consents to an act which has been done or will offer no opposition thereto, though it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, *he cannot question the legality of the action to the prejudice of those who have acted on the fair inference to be drawn from his conduct.* (*Exchange State Bank v. Taber*, 26 Ida. 723, 145 P. 1090, 1094. * * * *Leaf v. Reynolds*, 34 Ida. 643, 203 P. 458."

Having disposed of the first assignment of error, it becomes unnecessary to discuss the second assignment since the same principles of law are involved.

The only logical disposition of this case is to hold that appellants are estopped to raise the questions urged upon this appeal, and that the judgment of the trial court be sustained, and it is so ordered. Costs to respondents.

GIVENS, J., Specially Concurring.—The Legislature must have meant Section 29-101, I.C.A., subdivision 14, to authorize "unincorporated associations" which were not "corporations". Giving effect to such intention, respondent Trust would seem reasonably to come within such designation, and is, therefore, a legal entity, and as such entitled to exist and function.

Sections 25-1616 and 25-1619, I.C.A. impose a penal

penalty, but do not inhibit contracts; hence, the deed is not invalid. (*A. C. Frost and Company v. Coeur d'Alene Mines Corporation*, 312 U.S. 38, 85 L. ed. 500, 61 S. Ct. 414.)

Therefore, and for the above reasons, I concur in affirming the judgment.

KOELSCH, D.J., Concurring specially.—I concur in the conclusion stated by Justice Budge, as well as in his reason for that conclusion. But I also concur in the reason advanced by Justice Givens 'for his concurrence. This fact, as well· as the fact that my vote is determinative of this case, impels me to submit a brief statement of my reasons for my conclusion.

On and prior to June 13, 1942, the respondent Baltimore Trust owned and was engaged in developing a group of mining claims in Blaine County, Idaho. Adjoining this group of claims, John Edwards, now deceased, and Mary Edwards, then his wife, and now the appellant herein, owned a half interest in a group of mining claims, named Lucky Coin Nos. 1· to 7, inclusive. In the judgment of the Trustees of the respondent trust, the development work by them planned made it desirable that the trust should own the Edwardses' interest in the Lucky Coin group of claims. Negotiations for the acquisition of such interest resulted in the execution and delivery of the proper deed by the Edwardses to the trust on June 13, 1942. The trust thereupon proceeded with its development work, including therein a tunnel through the Lucky Coin group, being part of the work planned to develop the combined groups as a unit, or one mine. Mr. Edwards, who was a practical miner of many years experience, visited and inspected the work being done and not only expressed satisfaction therewith but urged continuance thereof, which the respondent did. However, though the respondent in the prosecution of said work expended between twenty-two and twenty-five thousand dollars, no ore in paying quantities was found.

The failure to strike ore was, no doubt, a great disappointment to Mr. Edwards, who, like all of the old time prospectors, had great faith in his property, and frequently expressed his opinion that an extension of a few feet of the tunnel would strike a lode and uncover a "big mine." Whether it was this failure to discover ore, or whether some other motive actuated Mr. Edwards, he became dis-

satisfied and demanded the return of the property, and on March 25, 1943, he and his wife instituted this action seeking a cancellation of the deed by which they had transferred their interest in the mining claims to the respondent trust.

In their complaint they allege as grounds for the cancellation of said deed that the same was obtained by fraud, and that the Baltimore Trust was in reality a corporation, but that it had not complied with certain acts by statute required of corporations, such failure to comply with such statutes amounting, in one instance, to a misdemeanor, by reason of which noncompliance the plaintiffs contended and do now contend that the trust was not qualified to take the title to real property, and that the said deed was and is null and void.

While the action was pending, Mr. Edwards died, and the action was prosecuted by Mrs. Edwards, as administratrix as well as in her individual capacity. The trial court, on conflicting evidence, held the same insufficient to show fraud, and also found against the plaintiff, appellant here, under her contention that the respondent trust was and is, in law, a corporation. The latter contention, therefore, presents the main question upon this appeal. In my opinion appellant's contention ignores the previous holding of this court, and is unsound in reason.

I shall not attempt to analyze many of the almost innumerable cases which have passed upon the question of the validity of business trusts of the nature of the respondent herein, which trusts are sometimes referred to as Massachusetts trusts.

Let it be admitted that there are cases which support the contention made by appellant, that under constitutional and statutory provisions similar or like Section 16 of Article 11 of our constitution, and Section 29-101 of our Code Annotated, common law trusts of the nature of the respondent are either classified for all purposes as corporations, or are entirely prohibited. Among such cases are *Reilly v. Clyne* (Ariz.), 234 P. 35, the Washington cases of *Ex rel Range v. Hunkle*, 219 P. 41, *State ex rel Colvin v. Paine*, 243 P. 2, and *Haynes v. Central Business Property Co.*, 249 P. 1057, which cases are cited and greatly relied upon by counsel for appellant in their brief.

Counsel for appellant also cite the case of *Hamilton v. Young* (Kan.), 225 P. 1045. The Kansas constitutional provision on the subject is almost verbatim with our Section 16 of Article 11 of the constitution. Though holding, in conformity with a former opinion, that the trust then involved was a corporation, the court says:

"Classification of the association as a corporation does not mean, of course, that it is to be treated in all respects and for all purposes as though it had obtained a charter in the regular way. The constitution grants no corporate privilege, but classification of certain associations with corporations requires that, so far as corporate analogy may be lawfully indulged, those associations are to be deemed corporations."

Later in the opinion the court quotes from its previous case of *Harris v. Oil Co.*, 204 P. 754, the following:

" 'It is quite obvious that the purpose was not to embody in the Constitution the ordinary definition of the word corporations but to give to that word as used in the article of which the provision was a part a special and enlarged meaning. The kind of association there described is by the terms of the section itself authorized to sue and be sued. The definition so adopted is not necessarily to be applied to the word corporation wherever it is used in the statute; but where the subject matter makes it pertinent and within the reason of the legislation that is the natural course.' "

And the court's conclusion is a clear recognition of the trust as an entity, and as being *sui juris*, as well as *sui generis*.

See, also, *Hodgkiss v. Northland Petroleum Consol.* (Mont.), 67 P. (2d) 811.

Beginning on page 22 of 156 A.L.R. there is an interesting discussion of the origin, nature and uses of business trusts of the kind involved in the case at bar, together with a collection of cases on both sides of the question of the legal status of such trusts. On page 32 of the volume referred to, the annotator, referring to an article on the subject in 23 Columbia L. Rev. 423, says that

"Instead of trying to squeeze such trusts into an existing

category, the courts should recognize them as a distinct type of business organization,"

and on pages 35 to 38 of the annotation, there is a collection of cases from jurisdictions in which such business trusts are held not to be corporations. Among such jurisdictions, and because of the case of *State v. Cosgrove*, 36 Ida. 278, 210 P. 393, Idaho is classified as committed to the doctrine that

"A Massachusetts or business trust is not a corporation."

On page 37 of the annotation, the author quotes from the Cosgrove case the following:

"A corporation is an artificial being, a trust is no being at all. A corporation is composed of individuals who subsist as a body politic under a special denomination. A trust is an estate, the equitable title to which is held by individuals who bear no contractual relation between themselves, nor is it essential that the trust be given a special denomination. The stockholders and directors generally are not liable for debts of a corporation, while the equitable owners and trustees of a trust may be liable for obligations incurred in connection with the trust property, unless their liability is limited by special contract."

The Cosgrove case was decided in November, 1922. Theretofore, this court in *Spotswood v. Morris*, 12 Ida. 360, 85 P. 1094, 6 L.R.A. (N.S.) 665, decided in June, 1906, had held a similar business trust not to be a corporation. In the latter case the court specifically held that the term corporation as used in Section 16 of Article 11 of the constitution does not apply to corporations in general but only as it is used in said section. In other words, that such trusts may in many instances be subject to the regulations prescribed by that article of the constitution for corporations in general. The determination in the Cosgrove case is consistent with that pronouncement, in that, though the court held the trust involved not to be a corporation, it nevertheless held it to be subject to the requirements of the Blue Sky Law.

Should these two cases, clear, logical and definite as they are, now be overruled? I submit that this should be done only if urgent reasons compel such action. Undoubtedly many investments have been made, many new enter-

prises inaugurated, and many rights acquired, in reliance upon the law as announced in these cases from this court. That the respondent trust was organized because of such reliance is self-evident. One of the great, perhaps the greatest, desideratum in the law is certainty, and stability. There can be no stability in the law if the courts today undo what they did yesterday.

"The fundamental conception of a judicial body is that of one hedged about by precedents which are binding on the Court without regard to the personality of its members.

"Provisions of the constitution and the law which are unchanged by any amendment cannot mean one thing today and the opposite tomorrow, if this is to be a government of laws and not of men."

D. A. Simmons
Ex-Pres., Am. Bar Assn.

In the case at bar there is not only no amendment of our constitution or of the statute which would nullify the enunciations in the Spotswood and the Cosgrove cases, but, as pointed out by Justice Givens, subdivision 14 of Section 29-101, I.C.A., enacted subsequent to the time of the decision in the said cases, is a distinct recognition of the legal entity of these business trusts.

I therefore concur in the affirmance of the trial court's judgment.

HOLDEN, J., Dissenting.—Sometime prior to June 13, 1942, the record does not disclose just when, defendants and respondents V. C. Belknap and G. P. Williams executed and filed in the office of the County Recorder of Blaine County, Idaho, a declaration of trust. It appears from the record the initial purpose of the trust was

"the acquisition of certain written options and leases covering the Baltimore patented lode mining claim and other mining claims in Blaine County Idaho as given by A. W. Ensign as acting receiver of the Baltimore and Victoria Mining Company, and by Charles Rathke and Hilda M. Rathke and Mrs. Annie M. Kelley, to G. P. Williams, and to exchange the units of this trust for the said options and leases. The trust then shall carry on operations and development under said leases and options and shall im-

mediately, for the purpose of development, sell units of this trust.

"This trust shall, however, have the following additional purposes and powers, for it is organized for the general objects of purchasing, locating, leasing or otherwise acquiring mines, mining claims, mining rights, water rights, and lands and interest therein, and the exploration, prospecting, working, developing of the said claims, rights and properties the carrying on of the business of mining in all of its branches, and to that end the acquiring, owning, operating, improving, developing, selling, leasing and conveying of mining claims and lands or any rights, titles, interests, or privileges therein; to mine and prepare for market all metal and mineral substances of all kinds, and to carry on any other operations or business which may seem necessary, convenient or incidental to any of the objects of the company, including the buying, selling, manufacturing of and dealing in minerals, plants, machinery, implements, conveyances, provisions and things capable of being used in connection with the mining or other operations of this trust; and, in general, to carry on any other business in connection therewith, whether mining, milling, manufacturing or otherwise, which may be necessary, profitable or convenient in connection with any of the above purpose within the State of Idaho."

June 13, 1942, John Edwards and Mary Edwards, husband and wife, of Blaine County, Idaho, executed and delivered to the Baltimore Trust, for a recited consideration of $1.00, "and other consideration," an undivided one-half interest in and to a certain group of lode mining claims located in Blaine County, Idaho, called the Lucky Coin Group. At the time of the execution of the deed, John Edwards was about eighty-five years of age, and Mary Edwards, his wife, was about seventy-two years of age.

March 25, 1943, John Edwards and Mary Edwards commenced this suit against defendants-respondents Belknap and Williams for the purpose of having the said deed cancelled and set aside and the property therein described quieted in them. May 14, 1943, defendants and respondents answered the complaint so filed by John and Mary Edwards, denying the material allegations thereof.

John Edwards died April 7, 1943. September 11, 1944,

by written stipulation, Mary Edwards, administratrix of the estate of John Edwards, then deceased, was substituted as one of the plaintiffs in the suit. The cause was tried September 11, 1944, by the court, sitting without a jury.

December 6, 1944, findings of fact and conclusions of law were made and filed in favor of defendants and respondents and against appellants, and on the same day decree was entered thereon. The appeal to this court is from the decree.

At the outset it should be pointed out: First, appellants do not attack the findings of the trial court to the effect that defendants and respondents were not guilty of fraud in obtaining the execution and delivery of the deed from the Edwardses to Baltimore Trust, explaining the adverse findings of the trial court on appellants' charge of fraud were due to the death of John Edwards prior to the trial of the cause, and consequent loss of his testimony concerning that charge. Second, that plaintiffs and appellants alleged in their complaint:

"The plaintiffs hereby tender to the defendants the said certificate (referring to the above mentioned trust certificate) of stock in said Baltimore Trust and offer to place the defendants in statu quo, and to do such equity in the premises as the court may direct."

Third, that the trial court found:

"That as the sole consideration for the execution and delivery of the said deed, there was delivered by the said G. P. Williams, as one of the trustees of the Baltimore Trust, a certificate in said Trust for two units thereof. . ."

"There has been no income or other return paid to the said John Edwards or the plaintiff, Mary Edwards, from the said units as represented by said Certificate No. 53 of the Baltimore Trust, but that said certificate and the units represented thereby were not at said times and are not now valueless."

Appellants also alleged in substance:

That the Baltimore Trust was, as a matter of law, a corporation, but that it was not incorporated under the laws of the State of Idaho, or elsewhere; that it had not

filed articles of incorporation in the office of the Secretary of State; that no corporate charter had ever been issued to it; that it had never been authorized to do business in the state as a corporation; that, therefore, the deed executed and delivered to it was null and void.

Respondents, among other things, alleged in their answer and contend on this appeal, in substance: that appellants were aware the Baltimore Trust had made large expenditures in development of the Lucky Coin Group under the deed to it, and "That by reason of their knowledge, of acquiescence and encouragement in the doing of development work upon the said Lucky Coin Group under said deed, the plaintiffs (appellants) have been and are estopped from claiming that the said deed is null and void."

In *Little v. Bergdahl Oil Co.*, 60 Ida. 662, 673, 95 P. (2d) 833, in harmony with the great weight of judicial opinion, this court held:

"To constitute an estoppel it must be shown there was a false representation or concealment of a material fact; that it was made with knowledge, either actual or constructive, of the facts; that the party to whom the false representation was made was without knowledge or the means of acquiring knowledge of the real facts; that the false representation was made with the intention that it should be acted upon and the party to whom it was made must have relied on or acted upon it to his prejudice."

While there is evidence Mr. Edwards visited the mine and expressed satisfaction with the development work and urged that it be continued, still and nevertheless, tested by the above quoted rule, that does not constitute an estoppel. Moreover, there is not even a hint in the record that Edwards made any kind of a representation to induce the so-called "Trust" to spend any money whatever in the development of the Lucky Coin Group, or to induce the "Trust" to continue the work of development after it had been commenced. Nor is there any evidence that Edwards concealed any 'fact, material or otherwise, from the "Trust." Nor has any case been cited nor can any case be found holding that a disappointment, no matter how "great," constitutes estoppel.

Appellant contends the so-called "Baltimore Trust"

having exercised the rights and privileges of a corporation without taking any steps whatever to incorporate, is prohibited under Subdivision 4 of Section 29-108, I.C.A. from either holding the real property conveyed to it or making a defense in this suit involving that property.

*State v. Cosgrove,* 36 Ida. 278, 210 P. 393, relied upon by respondents, is not in point. In that case, it appears a Montana common law trust came into the State of Idaho by and through an agent, one T. B. Cosgrove, and sold one of its units to J. D. Chisholm, without first having secured a permit under and as required by our "Blue Sky" law, and that following the sale the Montana common law trust (called "Montana Syndicate"), was informed against and prosecuted in the district court in and for Shoshone County. It further appears the Montana common law trust demurred to the information on certain grounds, not material here, and that the trial court sustained the demurrers. The State thereupon appealed to this court and on appeal a majority held the information was sufficient and reversed the trial court. An examination of that case makes it clear the decisive question presented to the court for decision was simply as to whether the information was, or was not, sufficient as against the demurrers.

Nor is *Spotswood v. Morris,* 12 Ida. 360, 398, 399, 85 P. 1094, also relied upon by respondents, in point. That was an action to recover a commission for allegedly procuring a purchaser for certain real estate. Briefly, one Benjamin F. Morris (the owner of 2720.80 acres of land located in Idaho County) joined one Dernham and others in a syndicate to purchase said lands from him and re-sell the same and divide the profits. Plaintiffs and respondents claimed the above mentioned lands had been listed with them for sale and that they had found a purchaser and brought an action to recover a commission, the decisive question being as to whether the realtors had found a purchaser and were, therefore, entitled to recover a commission. After discussing corporations, partnerships and joint stock companies or associations, the court reviewed the evidence and correspondence at great length, and then said:

"To recapitulate: Mulhall, the purchaser, had in April, 1902, received a letter from B. F. Morris containing a cir-

cular list of land, which list called the particular attention of Mulhall to the Denver Townsite Company land, and in response thereto, he left his home in Sioux City, Iowa, and traveled about two thousand miles on his way to inspect said land, and went into the office of the respondents at Moscow, Idaho, to make inquiry in regard to an uncle whom he had not heard from for years, and while there informed the respondents of his mission to see B. F. Morris and inspect said land. Respondents thereupon informed him that they were well acquainted with Morris and would give him a letter of introduction to him, which they did. Can it be contended with any reason under that state of facts that respondents procured Mulhall as a purchaser? He had concluded to go and inspect said land more than a month before he met respondents, having had his attention called to it by B. F. Morris, and had proceeded about two thousand miles on his way to see the land before he accidentally, or incidentally, met respondents.

"Those are the undisputed facts. Respondents were informed by Mulhall that he was on his way to see said land. The giving of said letter of introduction was a work of supererogation, and for the evident purpose of laying the foundation for a commission.

"The respondents had no more right to appropriate as their own a purchaser found by appellants than appellants had to appropriate one found by respondents, provided the land had been listed with them. There must be a little honor between real estate agents. If Mulhall's attention had been called to this land by respondents, no court would permit appellants to appropriate him as their own purchaser neither will respondents be permitted to claim as their purchaser one procured by appellants (provided the sale was not brought about by the efforts of respondents).

"Mulhall evidently was a keen, shrewd man—a real estate agent—and his letter of July 8th indicates to me that he had concluded to purchase said land, and the letter of respondents of July 14th to him did not influence him to make the purchase. It is sufficient to say that Mulhall was a purchaser procured by Morris, now deceased, and not by respondents."

In the instant case, the "Trust" did not file articles of incorporation, or, for that matter, make any attempt to

incorporate. It studiously avoided that. It, nevertheless, exercised the powers and enjoyed the privileges of a corporation. Where (which is not the fact here) articles of incorporation are actually filed and a certificate of incorporation issues, given a statutory ground, or grounds, the Attorney General may bring an action to annul, vacate or forfeit the articles of incorporation and franchise of an offending corporation. (Sec. 29-157, I.C.A.). But that, of course, could not affect the right of appellants to plead and rely upon Subdivision 4 of Section 29-108, supra.

There is no connection between Subdivision 4 of Section 29-108, I.C.A., and Sections 25-1616 and 25-1619, I.C.A. Subdivision 4, supra, of course, applies to the matter of holding real property or making a defense in a civil action involving real property conveyed to a corporation, where, as here, the powers and privileges of a corporation are exercised either before completing incorporation or taking any steps to incorporate. Section 25-1616, supra, makes it the duty of either a foreign or domestic mining corporation, as well as mining associations, to file a report during the month of June of each year, and Section 25-1619, supra, makes it a misdemeanor to fail to file the report. Each, Subdivision 4, supra, on the one hand, and said sections on the other, apply to wholly different matters and neither Subdivision 4 nor said sections affect the other in any way. So that Subdivision 4, supra, can and should be applied in the case at bar without regard to either of the above mentioned sections.

Finally, conceding for the purpose of argument, but for that purpose only, that respondent is, as a matter of law, a trust, does that give it the right to exercise the powers and enjoy the privileges of a corporation, and at the same time avoid the consequences of that conduct? If so, and that is what the majority, in effect, holds, why incorporate?

I am authorized to say that Mr. Justice Miller concurs in this dissenting opinion.