358 P.2d 387

R. V. SWANSON and Lottie Swanson, his wife, and Bessie Hubbard, Plaintiffs-Appellants,

v.

STATE of Idaho, and Evans Investment Company, a corporation, Defendants-Respondents.

No. 8865.

Supreme Court of Idaho.

Nov. 23, 1960.

Rehearing Denied Jan. 16, 1961.

F. M. Bistline and R. Don Bistline, Pocatello, for appellants.

Gen., Wm. R. Padgett, Chief Legal Counsel, and Andrew M. Harrington, Boise, for Idaho Department of Highways, for defendant-respondent.

Gregg R. Potvin, American Falls, for Evans Investment Co.

Frank L. Benson, Atty. Gen., Thos. Y. Gwilliam and Frank Langley, Asst. Attys. Gen., Anton Hohler, former Asst. Atty.

KNUDSON, Justice.

Appellants (plaintiffs) seek to quiet title to a strip of land 16 ft. wide and 400 feet long at what is known as Michaud Siding in Power Company described as:

"Beginning at a point south 53 degrees 10 minutes East, 890 feet from the ¼ corner between Sections 15 and 16, Township 6 South, Range 33 East of Boise Meridian, thence North 72 degrees 20 Minutes East 400 feet; thence South 17 degrees 40 minutes East to a point on the Northwesterly right of way line of the Oregon Short Line Railroad Company to the true point of beginning; thence South 72 degrees 20 minutes West along the Northwesterly right of way line of the Oregon Short Line Railroad Company a distance of 400 feet; thence North 17 degrees 40 minutes West 16 feet; thence North 72 degrees 20 minutes East a distance of 400 feet; thence South 17 degrees 40 minutes East 16 feet to the true point of beginning, same being a rectangular tract 16 feet wide and 400 feet long in Section 15, Township 6 South, Range 33 East of the Boise Meridian in Power County, Idaho."

The property in controversy borders the northwesterly right of way line of the Oregon Short Line Railroad Company.

In 1926 a warehouse 42 ft. by 280 ft. was moved to Michaud Siding by four persons as joint adventurers. The northerly 16 ft. of the warehouse stands upon a part of the land in controversy and the southerly 26 ft. on land leased from said railroad company. The warehouse was operated under the joint adventurer arrangement until 1927 when it was incorporated as the Michaud Warehouse & Grain Company. On April 6, 1948, W. J. Hubbard and wife purchased all the stock of the corporation and took possession of the warehouse at that time. W. J. Hubbard died April 25, 1956, and appellant Bessie Hubbard succeeded to all property and rights of her deceased husband.

Appellants R. V. Swanson and wife allege that Bessie Hubbard is the owner in fee of the area involved subject to an agreement to purchase (Ex. A.) executed by appellants bearing date of September 1, 1951, which agreement does not describe the property here involved. Under date of March 24, 1959, (being the date of commencement of trial of this action) appellant R. V. Swanson and the said Bessie Hubbard entered into a supplemental agreement (Ex. B.) wherein it is stated that the

property in controversy was inadvertently omitted from said purchase agreement and that the terms and conditions of said purchase agreement shall be applicable to and include the property here involved.

In support of appellants' claim of ownership they allege that they are now in possession of said property by virtue of said purchase agreement; that the vendors under said purchase agreement and their predecessors in interest have been in long continued possession of said property since 1926, coupled with complete dominion over same and open and visible acts of ownership, in that there is, and since 1926 has been located thereon, the northwesterly 16 ft. of a warehouse; that their predecessors in interest were during said period since 1926, in open, notorious and adverse possession of said property and during said period paid all taxes and assessments which were levied against said property.

During the trial appellants sought to introduce the testimony of two witnesses tending to prove an oral agreement on the part of L. L. Evans (now deceased) a former owner of the land in controversy to the effect that if the warehouse company would build the warehouse in the place where it is located such former owner would give them whatever land was needed for the warehouse site. Appellants' attempt to prove such oral agreement was by appellant Mrs. Hubbard who testified:

"I understood at the time that the warehouse was erected on that certain spot because L. L. Evans had told the warehouse company that if they did build it there he would deed them the warehouse site."

The witness (Mrs. Hubbard) did not testify that she heard L. L. Evans make any such statement nor did any other witness testify or offer to testify that such a statement was made in his presence.

The other witness (F. M. Bistline) testified:

"A. This was a meeting held approximately in 1934. As I recall it, L. L. Evans, the father of Paul Evans, died, I believe, in April of 1934, and this was a meeting of the board of directors at some time probably later in that year, or early in 1935, and at that time Mr. Davis brought up the matter about the fact that no deed had been executed, and said to Mr. Evans that L. L. Evans, his father, had promised, or had stated that if they put a warehouse up there he would see that they had all the necessary land they needed for it."

The rulings of the trial court in striking the testimony of Mrs. Hubbard and sustaining objections to the testimony of Mr. Bistline relative to statements of L. L.

**132**

Evans (deceased) are assigned as error. Such assignments are without merit.

■ In an attempt to establish an oral agreement on the part of J. Paul Evans and the Evans Investment Company (successors in interest to L. L. Evans) said witness F. M. Bistline continued his testimony as follows:

"A. Well, pursuant to the conversation, nevertheless, the deed was made, and, as I recall it, Paul Evans said he would see that a deed was made at that time. It was called to his attention and the deed was asked for, and he said he would see that the deed was made to the warehouse company, and he was asked for a deed for what they needed, and later on,—it wasn't very long after that that a deed was made. As to what the deed contained, I never did know that until the date in 1953 when Mr. Swanson and I came down to American Falls and talked to Mr. Evans, as I say after Mr. Swanson had received the letter from the State, and at that time we checked it with the belief that this piece of property was included in it, but we found that it was not included in it."

J. Paul Evans (in referring to the sam: meeting of the board of directors as the witness Bistline referred to in the foregoing excerpt) testified as follows:

"Q. And do you recall what was said in that meeting with regard to that, whether certain property would be deeded over to the warehouse company?

A. There was some property on the north side of the highway they wanted a deed to, so I gave them a deed to it."

The evidence offered in support of appellants' said contention is wholly insufficient. The burden is upon appellants to prove by clear, satisfactory, convincing and certain evidence that an oral agreement to convey the real property involved was made and entered into. Johnson v. Albert, 67 Idaho 44, 170 P.2d 403; Prairie Development Co., Ltd. v. Leiberg, 15 Idaho 379, 98 P. 616; Wormward v. Taylor, 70 Idaho 450, 221 P. 2d 686.

Appellants assign as error the action of the trial court in setting aside the default judgment entered on February 13, 1956. The affidavit filed in support of respondent's motion to set aside said default judgment discloses that the original appearance on behalf of respondent was made by attorneys who were employed by an interested title insurance company. Thereafter the defense of the action was turned over to the State of Idaho and referred to an attorney employed by the Department of Highways who at that time was familiar with the action but left the employ of the Department of Highways about the time the defense of the action was turned over to the State. The attorney to whom the action was thereafter referred was not informed of the filing of any motion of withdrawal on the part of

the attorneys who originally appeared as counsel for respondent and assumed that the action was still in a demurrer status.

The statutory authority for relief from defaults is contained in I.C. § 5–905 under which it is provided that a court may, in its discretion, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.

■ An application to set aside a default is addressed to the sound legal discretion of the trial court and the order of the court will not be reversed on appeal unless it clearly appears that the court abused its discretion; and in determining the question of discretion the power of the court should be freely and liberally exercised under the statute to mold and direct its pleadings so as to dispose of cases upon their substantial merits. Holzeman & Co. v. Henneberry, 11 Idaho 428, 83 P. 497; Pittock v. Buck, 15 Idaho 47, 96 P. 212; Crane v. City of Harrison, 34 Idaho 167, 200 P. 892; Johnson v. Noland, 78 Idaho 642, 308 P.2d 588.

■ The motion in the instant case was filed within the time provided by statute. There is no showing that appellants were prejudiced or that they were deprived of any advantage to which they were properly entitled. It is our opinion that the showing made was sufficient to establish inadvertence and excusable neglect and we are not prepared to say that there has been such abuse of discretion by the trial court as would justify us in reversing the order complained of.

The remaining specifications of error will be considered together since all relate to the same contention that judgment should have been entered for appellants upon the evidence in the case. By reason of such contention we must examine the record to ascertain if the findings and conclusions reached by the trial court are supported by substantial evidence. The record is not clear as to whether the record title to the property in issue stood in the name of L. L. Evans or the Evans Investment Company at the time (1926) the warehouse was placed upon a portion of the property involved. However it does appear that subsequent to the death of L. L. Evans (1934) such title was in Evans Investment Company, a corporation.

Having heretofore concluded that the evidence offered by appellants is insufficient to establish their contention that an oral agreement to transfer title to the property in issue was entered into by either of the parties, the remaining question to be resolved is "Does the evidence establish ownership in appellants by adverse possession?"

■ One asserting adverse possession as against the owner of real estate must prove each and every element of adverse possession by clear and satisfactory evidence and the burden of proof in this case is upon ap-

pellants. Pleasants v. Henry, 36 Idaho 728, 213 P. 565; Simmons v. Perkins, 63 Idaho 136, 118 P.2d 740; Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209; Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589.

 Under the statutory definition (I.C. § 5–210) of possession or occupation by a person claiming title not founded upon a written instrument, the only portion of the area in controversy actually occupied by appellants or their predecessors in interest is that occupied by the warehouse building. The evidence does not show that the remainder of the area involved has been protected by substantial inclosure or has been usually cultivated or improved by appellants or their predecessors in interest as contemplated by the statute. For this reason appellants' claim of title by adverse possession to the area not occupied by the warehouse building must fail.

Two statutes are pertinent and controlling in this case. They are I.C. § 5–209, which provides:

"Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

and I.C. § 5–210, which provides:

"For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved.

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

Although the trial court made no specific finding as to the use and occupancy of the warehouse by appellants and their predecessors in interest, we shall, for the purpose of considering the issue here involved, assume that the warehouse was continuously used and occupied by appellants and their predecessors in interest for warehouse purposes.

 The important question is "Did they occupy the area under a claim of title?" The trial court found that prior to June 2, 1953 (being the date of the quit claim

deed from Evans Investment Company to the State of Idaho) the appellants, or any of them, at no time claimed ownership in fee to the land in issue. The trial court also found:

"That the said Michaud Warehouse, since 1926, has stood partly on the disputed area without any owner or occupant thereof having ever made any claim to the fee title to any portion of the land conveyed by the Evans Investment Company to the State of Idaho by the Corporation Quitclaim Deed dated June 2, 1953."

The trial court had before it to consider in this case the allegation contained in appellants' original complaint which was verified by appellant R. V. Swanson (admitted in evidence as Def's. Ex. 7) which allegation is as follows:

"That the agreement between this plaintiff and the defendant referred to in paragraph VI of this complaint did not specifically describe the property hereinabove described, *as both parties were mistaken in the belief that said warehouse stood on leased property of the Oregon Short Line Railroad Company in its entirety,* * * *" (Italics supplied)

The same allegation was contained in appellants' amended complaint which was verified by appellants' attorney and the foregoing underscored portion was thereafter stricken upon motion of appellants. When a pleading is amended or withdrawn, the superseded portion disappears from the record as a judicial admission, but it nevertheless exists as an utterance once seriously made by a party, and when admitted in evidence may be properly considered by the court or jury as an item of evidence in the case. Shurtliff v. Extension Ditch Co., 14 Idaho 416, 94 P. 574; Anderson v. Hoops, 52 Idaho 757, 19 P.2d 908; C. I. T. Corp. v. Elliott, 66 Idaho 384, 159 P.2d 891; Stout v. McNary, 75 Idaho 99, 267 P.2d 625.

If at the time the warehouse was located upon the area in question those who caused it to be so located believed that it was standing on leased property of the Railroad Company, the act of appellants' predecessors in interest in entering and occupying the land involved was not an assertion of title in themselves. The allegation in appellants' complaint to which we have referred is of compelling force against the contention of appellants.

Appellants, Swanson and wife, at the time this action was commenced, claimed some interest in the area in dispute under and by virtue of an agreement (Ex. A) entered into by appellant Hubbard and her now deceased husband as vendors and appellants, Swanson and wife, as purchasers dated September 1, 1951. The only property described in said (Ex. A) which is in any respect related to the property in issue is de-

scribed in the following excerpt from said agreement.

"The parties of the first part in consideration of the covenants and agreements on the part of the said parties of the second part, hereinafter contained, further agree to sell and convey unto the said parties of the second part, and the second parties agree to buy all of that certain lease-hold situate in Power County, Idaho, particularly described as follows:

"Beginning at a point which is 30.0 feet perpendicularly *distance* Northwesterly from the center line of the double track of the Oregon Short Line Railroad, at Engineer's Station of the Oregon Short Line Railroad 1176677.0 which 1151.1 feet Northeasterly measured along said center line from the intersection with the West Line of Section 15, Township 6 South, Range 33 East Boise Meridian; thence parallel to center line of double track 280.0 feet Southwesterly; thence at right angles 26.5 feet northwesterly; thence at right angles 280.0 feet northeasterly; thence at right angles 26.5 feet southeasterly to the point of beginning, as described in lease between Oregon Short Line Railroad Company and W. J. Hubbard, dated December 14, 1926, and subsequent Extensions thereof, the latest of which is August 29, 1949, between Oregon Short Line Railroad Company, Union Pacific Railroad Company, as Lessor, and Michaud Warehouse & Grain Company, Lessee, being ACE No. 9132 of said railroad Company, together with the warehouse building, combined store and service station building and two small out buildings and equipment in said warehouse consisting of bulker, gas engine, piler and four hand trucks."

The following is an excerpt of the testimony of appellant Hubbard while being interrogated relative to said instruments (Ex. A and Ex. B):

"Q. (Mr. Potvin, continuing:) Since you do not say in Exhibit B whether you are referring to the actual title to the land, or a lease-hold, or possessory interest in the land, which did you mean when you drew and signed that Exhibit B?

"The Court: The one you signed today.

"The Witness: I thought it had to do, your Honor, with the land in controversy, that is, immediately under the warehouse, those sixteen feet under the warehouse.

"The Court: This is Mr. Potvin's question,—maybe we can make it clearer: In the Exhibit A agreement, leaving out some of that in Section 33, it refers to the property in Section 15 as a lease-hold agreement,—or as a lease-

hold, which would be less than the full title. That is what Exhibit No.,— what the agreement calls it. Now, when you made the little agreement today you don't say in there whether it was understood that you were selling to Mr. Swanson the fee title, or whether you were selling him only a lease-hold, and Mr. Potvin is trying to get your, if you know, thought that you had when you sold it to him back in September of 1951. Now, can you answer that?

"The Witness: I think I can answer that by saying that we planned to sell Mr. Swanson everything we had. I don't think,—

"The Court: But nothing more than what you had?

"The Witness: Just what we had."

The trial court was entitled to weigh such evidence and if the court believed that the only property owned by the Hubbards (which is in any manner related to this case) was in fact described in the agreement of December 1, 1951, and consisted of only a lease hold and the warehouse building, we are not at liberty to re-evaluate such evidence.

The record does not disclose that appellants or their predecessors in interest made any declaration or averment of ownership of said property between 1926 (when the warehouse was located thereon) and 1953 (when the State of Idaho made inquiry to ownership); nor does it disclose any manifestation on the part of those who located the warehouse, at the time of its location on the property in issue, that they claimed any title to the property upon which it was located.

Appellants cite a number of cases, nearly all of which involve fence or boundary line issues, which they contend support their position. They rely most heavily upon the case of Beneficial Life Insurance Company v. Wakamatsu, 75 Idaho 232, 270 P.2d 830, 835, wherein this Court said:

"From the long existence and recognition of the original fence as the boundary, and the want of any evidence as to the matter or circumstances of its original location, the law presumes that it was originally located as a boundary by agreement because of uncertainty or dispute as to the true line."

"Moreover, this long continued possession by defendants and their predecessors, coupled with their complete dominion and open and visible acts of ownership, gives rise to the presumption that their possession was adverse."

The facts involved in said above cited case are briefly stated by the Court as follows:

"So the facts are, without substantial conflict, that the land north of the original fence was continuously enclosed, occupied, cultivated and farmed by the defendants and their predeces-

sors for more than forty years before this action was commenced. During all that time they exercised these acts of ownership over the disputed area openly and visibly."

Not only had the property in issue been inclosed, occupied, cultivated and farmed by the defendants and their predecessors in interest, for forty years, but defendant's predecessors in interest had claimed title to the fence. In this connection the Court said:

"As to that part of the disputed area across his west two forties, being advised that McKenna was claiming to the fence, the claim of McKenna and his successors became and was adverse, regardless of what it had been before that time."

The other cases cited by appellants are likewise distinguishable.

■ Where there is no proof showing that actual occupation was accompanied by a claim, or an intention, inconsistent with the title of the owner, an adverse claim based upon such occupation cannot be allowed. Bower v. Kollmeyer, 31 Idaho 712, 175 P. 964.

In this respect the following language has been repeatedly approved by this Court [36 Idaho 728, 213 P. 567]:

" 'All the authorities agree that, in order to bar the true owner of land

from recovering it from an occupant in adverse possession and claiming ownership through the operation of the statute of limitation, the possession must have been, for the whole period prescribed by the statute, actual, open, visible, notorious, continuous, and hostile to the true owner's title and to the world at large.' "

\* \* \* \* \* \*

" 'Hence, an open and notorious occupation with hostile intent is a necessary constituent of an adverse possession. Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient.' "

Pleasants v. Henry, supra; Hogan v. Blakney, supra; Salvis v. Lawyer, supra.

Some contention is made that taxes relative to the area in controversy were not paid by appellants. The trial court made no specific finding on that question and we do not consider it controlling.

We also do not find merit to appellants' contention that the rule of estoppel is in any manner applicable in this case.

■ It is our view that the record does not contain competent or satisfactory evidence supporting a contention that the occupation of the land in issue was initiated or continued under a claim of title such as is required by our statutes. Since the findings of the trier of facts are supported by

substantial and competent, though conflicting evidence, such findings may not be disturbed on appeal. I.C. § 13–219; Larson v. Lindsay, 80 Idaho 242, 327 P.2d 775; Shellhorn v. Shellhorn, 80 Idaho 79, 326 P.2d 64; Summers v. Martin, 77 Idaho 469, 295 P.2d 265.

The determination of which way the evidence preponderated was for the trial court and we cannot say that he erred in finding and concluding in favor of respondent.

The judgment is affirmed. Costs awarded to respondent.

TAYLOR, C. J., SMITH and McFADDEN, JJ., and MARTIN, District Judge, concur.

KNUDSON, Justice.

A petition for rehearing has been filed in this case in which it is contended that the opinion filed is erroneous in two particulars:

First, in holding that the trial court properly excluded the offered testimony of witness F. M. Bistline relative to some statement purportedly made by a Mr. Davis to J. Paul Evans to the effect that L. L. Evans (deceased father of J. Paul Evans) had stated: "That if they put a warehouse up there he would see that they had all the necessary land they needed for it". Appellants claim error "For the reason that J. Paul Evans was the owner of the land at the time the warehouse was placed on the property and that any statement or admission made by him or in his presence, against his interest would be admissible". In support of appellants' contention that the excluded testimony was admissible under an exception to the hearsay rule appellants assume, and ask the court to assume, that J. Paul Evans was the owner of the land involved at the time the warehouse was placed upon it. The record does not disclose such assumed state of facts, nor does the record contain any evidence from which the court would be justified in assuming that such a fact existed.

Appellants' second contention is that the court erred in not holding that respondents were estopped to question appellants' rights to the property occupied by the warehouse. This Court has repeatedly stated the essential elements of an equitable estoppel. See Cahoon v. Seger, 31 Idaho 101, 168 P. 441; Sullivan v. Mabey, 45 Idaho 595, 246 P. 233; Loomis v. Gray, 60 Idaho 193, 90 P.2d 529; Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833; Edwards v. Belknap, 66 Idaho 639, 166 P.2d 451. In Charpentier v. Welch, 74 Idaho 242, 259 P.2d 814, 817, this Court, while discussing estoppel, quoted with approval as follows:

" ' "For its application there must be some intended deception in the conduct or declarations of the party to be es-

topped or such gross negligence on his part as to amount to constructive fraud.'''"

"'The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. 19 Am.Jur., Estoppel, § 42, pp. 642 and 643.'"

 In the instant case there is no competent evidence to support a contention that appellants' position was changed or that they were in any manner influenced by any deception in the conduct or declarations of any party, nor that appellants were without knowledge or the means of knowledge of the real facts. Norwithstanding

the fact that the warehouse (now belonging to appellants) stood upon a portion of the area in controversy for approximately 27 years prior to the date it was conveyed to respondent, State of Idaho, the record does not disclose that appellants or their predecessors in interest at any time during said period claimed title to or occupied any portion of said area with hostile intent. In our judgment the record is wholly wanting in the essential elements of estoppel.

The petition for rehearing is denied.

TAYLOR, C. J., and SMITH and Mc-FADDEN, JJ., and MARTIN, District Judge, concur.