440 P.2d 338

ROCKFORD EQUIPMENT COMPANY,
a Corporation, Plaintiff-Appellant,

v.

J. R. SIMPLOT COMPANY, a Corporation,
Defendant-Respondent,
and
Russell Rodgers and Verda Rodgers, husband
and wife, also known as Russell Rogers
and Verda Rogers, husband and wife, De-
fendants.

No. 10107.

Supreme Court of Idaho.

May 1, 1968.

Kerr & Williams, Blackfoot, for appel-
lant.

Furchner, Anderson & Beebe, Blackfoot,
for respondents.

SPEAR, Justice.

By its second amended complaint plain-
tiff (appellant), Rockford Equipment Com-
pany, alleges that on or about December
19, 1961, defendants Russell and Verda
Rodgers executed two promissory notes in
the total sum of $7,697.24, the same later
being secured by a crop and chattel mort-
gage which was regularly filed on the 3rd
of January, 1962. This mortgage describes
in particular defendants' "1961 potato crop
raised on the above described premises
which potato crop is now located in storage
in Simplots Potato Warehouse in Rockford,
Route #2, Blackfoot, Idaho, totalling ap-
proximately 12,000 sacks." Appellant fur-
ther alleges that respondent J. R. Simplot
Company later disposed of and sold this
crop to which its secured interest attached,
thereby converting the same to respondent's
own use and benefit; and that appellant
had succeeded to all right, title and interest
in the aforementioned notes and mortgage
and prays for judgment against both de-
fendants and respondent in the sum of
$7,697.24 plus interest and reasonable at-
torney's fees.

Respondent's answer was by way of
specific and general denials. A default
was entered against defendants Rodgers
for failure to plead or otherwise defend.

STATEMENT OF FACTS

(A) SHARE CROP LEASE

During the year 1961 defendant Rodgers,
as tenant, entered into a share crop agree-
ment with one Harvey Schwendiman, as
owner, to grow a crop of potatoes with

the division between landlord and tenant on the basis of two-thirds to the tenant and one-third to the landlord.

### (B) FIRST BANK MORTGAGE

On May 3, 1961, defendant Rodgers gave a crop and chattel mortgage to the Idaho Bank and Trust Company on his two-thirds interest in the potato crop in order to secure a note for $2,400. This mortgage indebtedness was guaranteed by Schwendiman as co-signor of the note and was duly recorded on May 10, 1961. Defendant's wife did not join in executing this instrument.

The printed mortgage also contains a future advance clause which was left in blank. Pursuant to this advance clause three additional notes of $1,000 each were made by defendant and Schwendiman during June and July of 1961 for various farming expenses in order to secure and maintain the crop.

### (C) NEGOTIATIONS FOR FURTHER ADVANCES

Thereafter the bank declined to make any further advances to defendant, and sometime during September or October certain negotiations took place at the Idaho Bank and Trust Company office in Blackfoot between Rodgers, Schwendiman, H. B. Fitzpatrick, vice-president and manager of the Blackfoot branch, and Frank Fullmer, vice-president and manager of Simplot Eastern Idaho Produce, Inc. (hereinafter referred to as Simplot Eastern).

(a) Rodgers' testimony indicates that Fullmer agreed to advance him a certain sum of money in order that the potatoes might be harvested. As part of the arrangement Simplot Eastern was to reimburse itself for the advances out of the proceeds from the sale of the crop.

(b) Over appellant's objections (hearsay), Fitzpatrick was permitted to testify to the effect that Simplot Eastern (through Fullmer) agreed to purchase the potatoes and advance funds to Rodgers and Schwendiman so that the crop could be harvested.

Exhibits 2, 3 and 4 are checks by Simplot Eastern totalling $7,000 issued in favor of Rodgers and the Idaho Bank and Trust Co. during October, endorsed by both Rodgers and Fitzpatrick and deposited to Rodgers' checking account. These advances were endorsed by the Bank because of the mortgage it had on the potatoes.

Fitzpatrick further testified that these checks were deposited to Rodgers' checking account to pay the labor for harvesting the potatoes and were not applied to the mortgage indebtedness of $5,400 plus interest existing at this time.

(c) Over similar objections, Fullmer testified that at this conversation Schwendiman asked him to handle the entire crop in return for the advances and that the potatoes would be his (Simplot Eastern's) if he would make the advances. He further testified that at this time Simplot Eastern agreed to "purchase" all the potatoes even though the harvest had not yet begun, with the price to be ascertained as the potatoes were sold. Thus, although the price was ascertained only as the potatoes were run, they were "purchased" in the fall and commenced to be run at this time. As part of this agreement, Rodgers and Schwendiman were to pay storage costs as was the custom for this type of service. These advances were made expressly for the purpose of harvesting the crop and were to be paid back to Simplot Eastern from the proceeds of future sales. These negotiations were entirely oral, with no written contract made and no money paid at that time.

A fourth check in the amount of $1,500 was issued by Simplot Eastern to Schwendiman which in turn Schwendiman signed over to Rodgers as a loan.

(D) SECOND CROP AND CHATTEL MORTGAGE—Exhibit C

On December 19, 1961, Rodgers and wife executed two notes for antecedent debts which were eventually assigned to appellant. In order to secure these notes, Rodgers and wife executed a crop and chattel mortgage (January 3, 1962—first dated Dec. 19, 1961 and this later erased) on their two-thirds interest in the then remaining potato crop "located in storage in Simplot's Potato Warehouse in Rockford." This mortgage was duly filed on the same date, i. e., January 3, 1962.

(E) QUANTITY OF REMAINING POTATOES AS OF JANUARY 3, 1962

At the time Rodgers executed this second mortgage, the entire potato crop had been harvested. Rodgers approximated that 12,000 sacks of potatoes were in storage at the Rockford cellar, but the records of Simplot Eastern show that there were only 6251.8 hundred-weight (sacks) in the bins allocated to Rodgers at the cellar.

(F) CUSTOM OF RENTAL (STORAGE) SERVICE

Fullmer testified that it was the custom of the trade to charge a bin rental for storage service where the price of the crop is to be ascertained at a future date (upon resale). This charge is for the service of taking care of the crop and seeing that it doesn't spoil.

(G) FINAL ACCOUNTING AFTER RESALE OF REMAINING POTATOES

According to Simplot Eastern's records, there remained 6,251.80 hundred-weight of potatoes as of January 3, 1962. Out of the original $8,500 in advances, $2,410.49 was still owing to Simplot Eastern as of December 6, 1961, which amount the company reimbursed itself from the post-January 3, 1962 resales.

In final settlement with Rodgers and Schwendiman on February 2, 1962, a deduction of $500 was made for bin rent. The total proceeds from the sale of the potato crop was $9,269.37, leaving a balance, after deductions, of $269.37 which was paid to Schwendiman.

Mr. Fullmer also testified that $1,376.10 was paid to Schwendiman and Russell Rodgers, Jr., on a separate lot of potatoes. These potatoes were segregated into different bins from those of Rodgers senior because he had been instructed to so segregate the different crops.

Thus, total income from the sale of potatoes after January 3rd can be broken down as follows:

(1) $2,410.49—remaining deduction on $8,500 advance

(2)  500.00—bin rental deduction

(3)  269.37—balance left over

(4) 1,370.10—proceeds from sale of Rodgers, Jr.'s crop

$4,549.96—Total

(H) REPAYMENT OF FIRST MORTGAGE TO BANK

Mr. Fitzpatrick testified that Schwendiman, as co-signer of the notes totalling $5,400 plus interest, discharged this obligation with the bank on February 13, 1962.

(I) STATUS OF SIMPLOT EASTERN (IDENTITY OF RESPONDENT)

(a) Mr. Fullmer testified that he was vice-president and manager of Simplot Eastern Idaho Produce Co., a separate and distinct entity from J. R. Simplot Company, and at no time in dealing with this transaction was he an employee or agent for J. R. Simplot Company. The crop in question was bought entirely for the account of Simplot Eastern, whose business was primarily that of a "pack out" company. If any work was done for J. R. Simplot Company, Simplot Eastern would get paid for these services.

On cross-examination, Fullmer testified that the sign on top of his office building and at the Rockford cellar still read "J. R. Simplot Co." This was because these signs were never changed after 1958 when Simplot Eastern was formed. However, Fullmer denied that one central bookkeeping

and auditing system was maintained for both companies, but rather that each was kept separate.

(b) Documentary Evidence.

The documentary evidence establishes that Simplot Eastern and J. R. Simplot Company are separate entities, with the latter now being a Nevada Corporation. Mr. J. R. Simplot is the president of both corporations and Lloyd Haight is an officer of the Simplot Company, an incorporator of Simplot Eastern, and general counsel for both corporations.

Defendant's Exhibit D is an "interoffice communication" from Mr. Haight to Fullmer on J. R. Simplot Company stationery regarding Simplot Eastern's transaction with Schwendiman and Rodgers.

Fullmer replied to this interoffice communication on Simplot Eastern stationery, signing for Simplot Eastern Idaho Produce.

Finally, Fullmer admitted that some of the records contained in Exhibit 12, i. e., those labeled "Simplot Produce Company," were written on old forms of the J. R. Simplot Company. However, the remainder of the records are marked "Simplot Eastern Idaho Produce, Inc.," as well as all checks paid to Rodgers, the bank and Schwendiman. Upon this evidence the trial court made the following pertinent findings of fact:

(1) That Schwendiman and Rodgers agreed to sell the potato crop to Simplot Eastern with the understanding of all concerned that Simplot Eastern would advance them certain monies to complete harvesting and that Simplot Eastern was to take possession of said crop, sort, grade and market it in an orderly manner and first reimburse itself out of the proceeds thereof and then apply the balance, if any, to the Bank's mortgage and then to Schwendiman and Rodgers.

(2) That continuous possession and control of the crop remained with Simplot Eastern until the last of the potatoes were marketed on or about February 2, 1962.

(3) That the gross weight of potatoes remaining in storage as of January 3, 1962 was 6,251.80 hundred-weight.

(4) That pursuant to said agreement Simplot Eastern did reimburse itself $2,-410.49 from the sale of these remaining potatoes (January 3) which was still owing from the original advancement of monies.

(5) That the ($500) bin rental was a recognized custom of the trade, even though there was an immediate transfer of title to the buyer company, for the reason that the buyer was still protecting the interests of the seller of the crop in and to the final proceeds to be derived therefrom.

(6) That the plaintiff corporation had full knowledge of such actual control and possession of the crop by Simplot Eastern when it took Rodgers' crop mortgage, and that it did not make inquiry as to the title to said crop other than with Rodgers.

(7) That neither the Bank nor Simplot Eastern had actual notice or knowledge of the purported second mortgage.

(8) That the total proceeds from the marketing of said crop amounted to $9,269.37.

(9) There being insufficient funds to pay the bank on its first mortgage, Schwendiman was later called upon to and did discharge this obligation sometime later in 1962.

(10) That Simplot Eastern and J. R. Simplot Company are wholly separate and distinct corporations and that Fullmer was acting solely for Simplot Eastern.

The court concluded that title to the crop passed simultaneously with the sale agreement to Simplot Eastern in August or September, 1961, and such passage of title was accompanied by actual and continuous change of possession from seller to buyer. The court further concluded that the facts so found were also sufficient to support a

valid pledge to Simplot Eastern. Most importantly, the trial court concluded "that plaintiff [appellant] has wholly failed to show that it has any right, claim, demand or cause of action against J. R. Simplot Company or that said defendant is indebted to the plaintiff in any sum or amount or at all." The court then dismissed as against J. R. Simplot Company, but rendered judgment against the defendants Rodgers. From such order of dismissal appellant has perfected this appeal listing 25 assignments of error. Only one of these (No. 19) need be discussed in this opinion. In this assignment appellant contends the court erred in conclusion number I that plaintiff (appellant) did not have any cause of action against defendant J. R. Simplot Company and in conclusion number V granting such defendant its costs.

■■ This contention is not meritorious. The documentary and oral evidence overwhelmingly supports the findings and conclusions to which objection has been taken. *J. R. Simplot Company and Simplot Eastern Idaho Produce, Inc. are, and during all times involved in this cause have been, separate and distinct legal entities.* The evidence relied upon by appellant: 1. J. R. Simplot Co. sign on warehouse where potatoes were stored and on office building used by Fullmer; 2. the interoffice communication from Haight to Fullmer on "J. R. Simplot Co." stationery; and 3. the interlocking directors and officers of the two corporations is insufficient to establish any responsibility on the part of J. R. Simplot Company for the transactions involved in this cause. The trial court so found and concluded and these findings and conclusions are amply supported by competent and substantial evidence. They will not be disturbed on appeal. I.C. § 13–219 and numerous cases annotated thereunder; Rule 52(a), I.R.C.P.; Saviers v. Saviers, 92 Idaho 117, 438 P.2d 268 (1968); Meredith v. Meredith, 91 Idaho 898, 434 P.2d 116, 119 (1967); Clements v. Clements, 91 Idaho 732, 430 P.2d 98; Parks v. Parks, 91 Idaho 420, 422 P.2d 618

(1967); Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965).

This disposes of the appeal and makes unnecessary any ruling upon or discussion of the other 24 assignments of error.

Judgment and order affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.