452 P.2d 359

**Don HECKMAN and Vern Heckman, dba Heckman Brothers, a Partnership, Plaintiffs-Respondents,**

v.

**BOISE VALLEY LIVESTOCK COMMISSION COMPANY, dba O. K. Livestock Feed Yards, Defendant-Appellant.**

**No. 10191.**

Supreme Court of Idaho.

March 28, 1969.

Peter J. Boyd, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for appellant.

Ryan & Speropulos, Weiser, for respondents.

SPEAR, Justice.

The issue presented is whether respondents, by acceptance of a note from a third person, intended to discharge the original debtor, appellant, from its obligation. We agree with the trial court's findings of fact, that the respondents did not intend to release the appellant, and affirm the judgment for respondents.

During the winter of 1962–1963 respondents, operating as a partnership, consigned 1500 to 2000 head of cattle to appellant, and Idaho corporation, for the purpose of having the cattle fattened and readied for market. In April 1963, appellant sold 35

head of respondents' calves from this herd. Appellant was paid for the cattle and made a corresponding credit entry on respondents' trading account. This entry, after deduction of commissions, was $9,440.30. It is respondents' contention that this sum has never been paid. On the other hand, appellant contends it was released from its obligation to pay when respondents accepted a personal note in that amount from one Edgar Stephens, also known as Barney Stephens.

Stephens, at the time in question, was a major stockholder in, and acting manager of, appellant. In September 1963, Stephens advised respondents that appellant was not in a financial position to pay the account but further advised that the account would be paid in 30 to 60 days. The account was not paid within the stated time.

According to respondents, they demanded evidence of the indebtedness to show their banker in the spring of 1964. Respondents testified that Stephens agreed to execute, *on behalf of the corporation,* a note evidencing such antecedent indebtedness. The note itself, however, does not indicate his representative capacity.

On June 30, 1964 Stephens had the full amount of the note credited to what was titled the Barney Stephens Trading Account with the appellant company. The parties are in dispute as to the status of this account. Such trading accounts generally represented transactions by various cattle traders. When the account showed a profit from trading, the trader was entitled to a payment. When a trader lost money on his transactions, he was apparently obligated to the company. The trading accounts were carried as accounts receivable. Therefore a debit balance in any account would represent money due the company. A credit balance would be money the company owed. The Barney Stephens Trading Account continually showed a debit or money-owed-the-company balance.

Appellant, through its president, contends that this was a bona fide trading account, representing money owed by Stephens, and attempts to sustain its position by virtue of an apparent settlement. This agreement, dated February 11, 1965, provided that the appellant would relinquish all claims against Stephens, on the basis of the Trading Account and his "personal account" (a separate account), in return for all of Stephens' 220 shares of stock of appellant. This "personal account" more clearly represents an obligation to appellant and consideration for the stock. The last balance in it, prior to the account being closed, was $4,664.42.

Stephens testified that the Barney Stephens Trading Account was, in reality, a fictitious account used to adjust appellant's books in order to pass the Packers and Stockyards Commission audit. This position, and the trial court's finding that this *was* a fictitious account, is borne out by the fact that such an account could be used to obscure company losses and represent them on the books as assets. Furthermore, Stephens testified that he never used the account for personal transactions.

On appeal appellant's attack is directed toward the findings of fact drawn from the evidence. Payment of respondents' account was made, appellant argues, by the note from Stephens. It contends there was consideration for the note because appellant was insolvent and respondents knew they were accepting a personal note.

■ ■ The trial court treated appellant's position as one of affirmative defense since appellant had admitted the initial obligation. The court found that the appellant had not established its affirmative defense by a preponderance of the evidence. In the trial court's opinion the respondents never intended to release appellant from its obligation but merely took the note as evidence of the indebtedness. There was no consideration for the exchange of debtors because it did not appear that Stephens was a better financial risk. Furthermore, respondents' conduct up to the time of the suit against Stephens was consistent with their intent to hold appellant liable. The

court also noted that the taking of collateral security does not discharge the basic obligation, nor is a primary obligor released in the absence of an intelligent and knowing waiver. This was a correct statement of the Idaho law. See Minidoka County for Use and Benefit of Detweiler Bros., Inc. v. Krieger, 88 Idaho 395, 399 P.2d 962 (1964); Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co., 87 Idaho 185, 392 P.2d 191 (1964). Since the findings of the trial court are supported by substantial and competent, though conflicting evidence, this court will not disturb them. I.R.C.P. 52(a); I.C. § 13–219; Swanson v. State, 83 Idaho 126, 358 P.2d 387 (1960); Rockford Equipment Co. v. J. R. Simplot Co., 92 Idaho 218, 440 P.2d 338 (1968).

Appellant also questions whether or not Stephens was acting within the scope of his authority in executing the note. This is irrelevant. If Stephens was a valid agent for the purpose of executing corporate notes, appellant would be bound by the note. If Stephens was not authorized to execute notes, the appellant's primary obligation would still exist.

The only plausible basis for defense is that since appellant was indebted to respondents and Stephens was indebted to appellant, Stephens paid respondents and correspondingly reduced his obligation to appellant. However, the trial court found, on disputed facts, this theory was not proven by a preponderance of the evidence; so appellant must fail in this contention also.

The difficulty in this case arises not so much from the legal principles involved as it does from the fact that Stephens was acting simultaneously in two different capacities; one as an agent or representative of the appellant and another as an individual. In the process of effecting a novation, the parties accepting new or different obligations must do so knowingly and intentionally. Independent S. Dist., Class A, No. 1 v. Porter, 39 Idaho 340, 228 P. 253 (1924). Thus, in this case, in order for there to have been a novation, respondents must have intended the substitution of Stephens for appellant and appellant must have knowingly consented to relinquish its claim against Stephens in return for a settlement of the debt owed to respondents. Stephens' intention as an individual is not critical since he did not assume any new or substantially different obligation. Stephens simply switched creditors.

If Stephens could be separated into his two different entities, the situation in this case would fall squarely within the example given in Restatement of Contracts, § 429, Example 2. (1932):

"A [Stephens] owes B [appellant] $100, and B [appellant] owes C [respondents] $100. A [Stephens] contracts with B [appellant] that in consideration of B's [appellant's] agreement to discharge A [Stephens], A [Stephens] will assume the indebtedness of B [appellant] to C [respondents]. A [Stephens] is discharged but B [appellant] is not discharged from his duty to C [respondents], unless C [respondents] assents to accept A [Stephens] as his debtor instead of B [appellant]. If C [respondents] so assents there is a compound novation. Otherwise C [respondents] is a creditor beneficiary with rights against both A [Stephens] and B [appellant]."

As is apparent from this example, aside from the status of any agreement between appellant and Stephens, the assent of respondents would be essential to a complete substitution of debtors. In the absence of such assent respondents would have a remedy against both appellant and Stephens. In this case respondents categorically denied any such intention. If respondents did not intend to release appellant or substitute Stephens, then it would appear respondents obtained two debtors and could elect to proceed against either one for satisfaction of the obligation. In fact respondents did begin proceedings against Stephens but dismissed that action, without prejudice, and sought recovery from appellant.

The acceptance of the note is equally consistent with the theory of obtaining additional security or evidence of indebtedness as it is with a theory of substitution of debtors. In the face of conflicting testimony the trial court, having the advantage of observing the witnesses in aid of determining their credibility, found that respondents did not intend to substitute Stephens for appellant. Under the circumstances this court is bound to accept such findings of fact. Swanson v. State, supra; Rockford Equipment Co. v. J. R. Simplot Co., supra; I.R.C.P. 52(a).

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.